IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

JANE DOE,                          *

    Plaintiff,                  *

vs.                                *      CASE NO. 3:22-CV-47 (CDL)

CLARKE COUNTY SCHOOL DISTRICT,     *

    Defendant.                  *

_____

O R D E R

    Jane Doe alleges that she was sexually abused by her teacher, Maurice Bouchard, when she was a ninth grade student at Clarke Central High School in Athens, Georgia.  Doe now brings claims against Clarke County School District ("District") pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* and 42 U.S.C. § 1983.  The District moved to dismiss Doe's Complaint in its entirety.  For the following reasons, that motion to dismiss (ECF No. 6) is granted in part and denied in part.

MOTION TO DISMISS STANDARD

    "To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual

allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556.  But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

Doe alleges the following facts in support of her claims. The Court accepts these facts as true for purposes of the pending motion to dismiss.

Jane Doe was fourteen or fifteen years old when she enrolled as a ninth grade student at Clarke Central High School ("Clarke") in Athens, Georgia.  First Am. Compl. for Damages ¶¶ 14, 16, ECF No. 3 ("Am. Compl.").  She began attending Maurice Bouchard's Advanced Biology class when school started in August 2016.  *Id.* ¶ 19.  Bouchard immediately began targeting Doe because he believed that Doe resembled a female character from a Japanese anime show he watched about a man who becomes a teacher "based on the perception that teachers have a strong romantic influence over their female students."  *Id.* ¶ 20.  Each day, Bouchard openly flirted with Doe and would find reasons to pull Doe into the

2

hallway alone during class.  *Id.* ¶¶ 22, 24.  He memorized Doe's schedule so that he could harass her in the hallways and make her come into his classroom, which would often make her late to her next class.  *Id.* ¶ 26.

After the students began receiving their first grades, Bouchard falsely told Doe that she was failing in his class and needed to spend her lunch periods in his classroom.  *Id.* ¶ 27. During these lunch periods, Bouchard would lock Doe in his classroom closet against her will, grope Doe's breasts, and disclose to Doe the sexual fantasies he had about her.  *Id.* ¶ 29. Bouchard also psychologically abused Doe by berating her when he learned Doe was dating a boy in her class.  *Id.* ¶ 30.  Because of Bouchard's abuse, Doe's health deteriorated and she began receiving failing grades in her classes.  *Id.* ¶¶ 37–38.

Before Doe enrolled at Clarke, the school's administration received a report that Bouchard "accidentally" sent a student newspaper reporter pornography and later told the student he had a sex addiction.  *Id.* ¶ 39.  Bouchard was not disciplined for this incident.  *Id.*  Shortly after Doe enrolled at Clarke, multiple students reported to the school's principal, Marie Yuran, that Bouchard often acted inappropriately towards Doe in the classroom and that Bouchard frequently spent time alone with Doe in the hallway during class instead of teaching.  *Id.* ¶ 40.  Later in the school year, multiple students reported to Yuran that Bouchard and

Doe frequently spent time alone in Bouchard's classroom closet. *Id.* ¶ 41.

Doe's teachers also noticed Bouchard's behavior towards Doe and reported that behavior to Clarke administration.  At the beginning of the school year, teachers began noticing that Doe often arrived late to their classes because she was coming from Bouchard's classroom.  *Id.* ¶ 42.  Later, multiple teachers reported to Clarke administration that Doe was exhibiting concerning behavior, including crying at school and acting unresponsive during class.  *Id.* ¶ 44.  One teacher walked in on Bouchard and Doe alone in Bouchard's classroom and told Bouchard that he needed to "stop because you are going to get our school in trouble."  *Id.* ¶ 45.  This teacher reported Bouchard to the administration.  *Id.* Despite being made aware of Bouchard's inappropriate conduct, Yuran and District Superintendent Demond Means mandated in Spring 2017 that Doe spend her lunch hour in Bouchard's classroom and placed Bouchard in an official position as Doe's after-school tutor.  *Id.* ¶¶ 48, 60.  Bouchard drove Doe home from after-school tutoring on several occasions and raped her off campus in his car. *Id.* ¶¶ 51-52.

In June 2017, Lynn Duke from Clarke County Human Resources received an anonymous report that Bouchard sent inappropriate texts to Doe, but she did not take any action despite having the authority to do so.  *Id.* ¶ 54.  Bouchard's abuse of Doe continued

until August 2017, when Yuran and Means learned about inappropriate text messages between Bouchard and Doe.  *Id.* ¶ 57.  Yuran and Means did not take any action at first, but after receiving additional text messages, they met with Bouchard and police investigators. *Id.* ¶¶ 57–59.  Shortly after the meeting, Bouchard resigned.  *Id.* ¶ 59.

DISCUSSION

**I.   Title IX Claim**

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  School districts are liable for damages for a teacher's misconduct under Title IX when "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998).  The District argues that Doe's claim fails this standard for two reasons.  First, the District argues that Doe failed to allege that an appropriate school official had actual notice of Bouchard's alleged conduct.  Second, the District contends that its officials were not deliberately indifferent to Bouchard's alleged conduct.

A.  Does Doe sufficiently allege that an appropriate
official had actual notice of Bouchard's abuse?

The first question for the Court is whether Doe adequately
alleged that an appropriate school official had actual notice of
Bouchard's abuse.  Actual notice can be established by showing
that an official has notice of the teacher's prior harassment of
the Title IX plaintiff herself or notice of other conduct that
would alert the official that the teacher has a history of sexually
harassing students.  *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d
1248, 1257-59 (11th Cir. 2010).  For example, in *School Board of
Broward County*, the Eleventh Circuit found that two prior
complaints that a teacher inappropriately touched students and
propositioned them for sex provided adequate notice to school
officials that the teacher posed a substantial risk of future
sexual abuse to other students.  *Id.* at 1258-59.  Similarly, in
*Williams v. Board of Regents of the University System of Georgia*,
the Eleventh Circuit found that school officials' knowledge of
prior sexual harassment allegations against a student-athlete at
his prior school were sufficient, for purposes of a motion to
dismiss, to put those school officials on actual notice that the
student-athlete posed a risk of sexual abuse.  477 F.3d 1282, 1294-
95 (11th Cir. 2007).

Here, Doe plausibly alleged that District officials knew
Bouchard posed a risk of sexually abusing Doe.  Doe alleges that

6

Yuran, the school principal, received multiple reports from students that Doe and Bouchard were spending time alone in Bouchard's closet and in the hallway and that Bouchard acted inappropriately with Doe during class. Doe also alleges that Clarke "Administration" was aware of Bouchard's conduct because a teacher who walked in on Bouchard and Doe alone in Bouchard's classroom reported Bouchard to the administration.[1]  Am. Compl. ¶ 45.  Clarke administration was also aware of previous reports that Bouchard sent pornography to a different student and told that student he had a sex addiction.  Further, Doe alleges that Duke, a human resources officer who had the authority to take corrective measures in response to sexual harassment complaints, received a report about inappropriate text messages exchanged between Bouchard and Doe.  Finally, Doe claims that Yuran and Means later learned of the inappropriate messages between Doe and Bouchard and failed to act until additional inappropriate messages surfaced.

The District, citing *Gebser*, argues that Doe's allegations are insufficient to demonstrate actual notice because "alone time"

---

[1] The District does not seriously argue that Doe failed to identify an appropriate official who had authority to take corrective measures on the District's behalf.  The District does, however, argue that Doe's allegations regarding inappropriate behavior reported to the "administration" by other teachers are insufficient because Doe does not identify a specific administrative official.  Def.'s Br. in Supp. of Mot. to Dismiss 4–5, ECF No. 6-1.  The Court finds that Doe's allegations are sufficient for present purposes.  Doe may need to engage in discovery before she can identify which specific officials received these reports.

in a closet and reports of "inappropriate" conduct and text
messages are not necessarily sexual.  Def.'s Br. in Supp. of Mot.
to Dismiss 4, 6–7, ECF No. 6-1.  Unlike the plaintiff in *Gebser*,
however, Doe alleges that school officials knew about more than a
few inappropriate comments made in a classroom.  Doe alleges that
Clarke administration knew that Bouchard had sent pornography and
admitted his sex addiction to a student in the recent past.  She
alleges that Clarke administration, specifically Yuran, also knew
from student reports that Bouchard was finding reasons to spend
alone time with Doe in private places.  Teachers and students do
not "incidentally" spend time alone in closets together
repeatedly.  Moreover, Doe alleges that multiple teachers reported
to the administration that they were concerned that Doe was crying
at school and acting unresponsive in class, and a teacher reported
to the administration that she walked in on Bouchard and Doe when
they were alone together in Bouchard's classroom.  Finally, Doe
alleges that Duke, and later Yuran and Means, learned that Bouchard
had exchanged inappropriate text messages with Doe.  Drawing all
reasonable inferences in Doe's favor, Doe's complaint plausibly
alleges that District officials had actual notice of conduct
sufficient to alert them that Bouchard was sexually abusing Doe.

B.  Does Doe sufficiently allege that District officials were deliberately indifferent to Bouchard's abuse?

The next question is whether Doe adequately alleged that District officials were deliberately indifferent to Bouchard's alleged misconduct.  Deliberate indifference under Title IX "is an exacting standard; school administrators will only be deemed deliberately indifferent if their 'response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'"  *Sch. Bd. of Broward Cnty.*, 604 F.3d at 1259 (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).  "In essence, Title IX's premise 'is an official decision by the recipient not to remedy the violation.'" *Id.* (quoting *Gebser*, 524 U.S. at 290).

The District argues that its officials, including Yuran, Duke, and Means, could not have been deliberately indifferent to Bouchard's abuse because they did not know Bouchard's actions towards Doe were sexual until they received the content of Bouchard's text messages in August 2017.  The District asserts that, upon receiving the content of those messages, the officials immediately confronted Bouchard and forced him to resign.  But, as discussed previously, Doe alleges sufficient facts to suggest that the officials, particularly Yuran, knew that Bouchard posed a serious risk after the complaint that Bouchard sent pornography and admitted a sex addiction to another student.  Then, throughout

the school year, Yuran and Clarke administration received reports from multiple sources that Bouchard was spending time alone with Doe in his closet and hallway during class time and acting inappropriately with Doe while alone with her in his classroom. Despite that knowledge, Yuran and other officials did not take any action for months and even mandated that Doe spend extra time with Bouchard during lunch and in after school tutoring.  Even when Duke later learned that Bouchard was sending inappropriate text messages to Doe, school administrators took no action.  These allegations are sufficient to show deliberate indifference.  *See Monroe Cnty. Bd. of Educ.*, 526 U.S. at 654 (finding, on a motion to dismiss, that the plaintiff probably could show deliberate indifference on remand in the peer-to-peer harassment context when school administrators "made no effort whatsoever either to investigate or to put an end to the harassment").  Not responding at all to such allegations could plausibly be construed as "clearly unreasonable in light of known circumstances." *Sch. Bd. of Broward Cnty.*, 604 F.3d at 1267.

In summary, Plaintiff adequately alleges that District officials had actual notice of Bouchard's alleged misconduct but were deliberately indifferent to it.  Therefore, the District's motion to dismiss Doe's Title IX claim is denied.

## II.  Section 1983 Claims

In addition to her Title IX claim, Doe brings claims under 42 U.S.C. § 1983 for the District's alleged violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses, asserting that the District was deliberately indifferent to Doe's right to not be sexually abused by a District employee.  The District argues that these claims should be dismissed because Bouchard did not act under color of state law, Eleventh Circuit precedent does not recognize teacher-on-student sexual abuse as a constitutional violation, and because Doe did not allege a basis for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  The District also argues that Doe fails to allege a similarly situated comparator for purposes of her Equal Protection claim.  The Court addresses each argument in turn.

### A.  Did Bouchard act under color of state law?

"Section 1983 provides a cause of action against any person who, 'under color of' state law, deprives another of her 'rights, privileges, or immunities secured by the Constitution.'"  *Harper v. Pro. Prob. Servs. Inc.*, 976 F.3d 1236, 1240 (11th Cir. 2020) (quoting 42 U.S.C. § 1983).  The District argues that Bouchard was not acting under color of state law because Bouchard's rape of Doe occurred after school hours and off school property in Bouchard's car.  "A person acts under color of state law when he acts with

11

authority possessed by virtue of his employment with the state." *Almand v. DeKalb Cnty.*, 103 F.3d 1510, 1513 (11th Cir. 1997). Private, off duty actions may be taken under color of state law if those actions and the official's employment actions are part of an "indivisible, ongoing series of events." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1305 (11th Cir. 2001) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 461 (5th Cir. 1994) (en banc) (Higginbotham, J., concurring)).

Doe argues that Bouchard acted under color of state law because a sufficient nexus existed between his official duties and his sexually abusive conduct. Doe points to *Doe v. Taylor Independent School District*, a Fifth Circuit case cited with approval by the Eleventh Circuit in *Griffin*, to support her argument. In *Taylor*, the Fifth Circuit found that a public schoolteacher was acting under color of state law when his abuse began during school hours and continued into after-school hours. 15 F.3d at 452 n.4. The teacher, who was also the abused student's basketball coach, groomed the student in class, and eventually kissed her after a basketball game. *Id.* The Fifth Circuit reasoned that "if a 'real nexus' exists between the activity out of which the violation occurs and the teacher's duties and obligations as a teacher, then the teacher's conduct is taken under color of state law." *Id.*

12

Here, the District focuses on the off-campus rape and contends that this conduct is entirely unrelated to Bouchard's position as Doe's teacher.   But the District ignores Doe's allegations of Bouchard's sexual harassment and abuse that occurred at school and was possible only because Bouchard was Doe's teacher.   Much of Bouchard's alleged conduct, such as isolating Doe alone in a closet and inappropriately touching her, took place at school during school hours.   Doe also alleges that Bouchard took advantage of his position as Doe's teacher to ensure that Doe was placed in an official after-school tutoring program under his supervision.   And Doe alleges that as a result of his placement as Doe's tutor, Bouchard was able to drive Doe off campus and rape her in his car. For all these reasons, the Court concludes that Doe adequately alleged that Bouchard acted under color of state law.

B.   Did the District deprive Doe of a constitutionally protected right?

The District contends that even if Bouchard acted under color of state law, his conduct did not violate Doe's constitutional rights.   The District also asserts that even if Doe alleged a constitutional violation, she did not allege a basis for municipal liability.   The Court will first examine whether Doe adequately alleged a constitutional violation, then determine whether she alleged enough facts for the District to be held liable.

1.   *Did Doe allege a constitutional violation?*

Doe contends that the District violated the Fourteenth Amendment's Due Process and Equal Protection Clauses. The Court will address the equal protection claim first, then the due process claim.

Doe claims that the District discriminated against her based on her sex in violation of the Fourteenth Amendment's Equal Protection Clause because the District demonstrated deliberate indifference to the risk of sexual harassment and abuse presented by Bouchard. "The Equal Protection Clause confers a federal constitutional right to be free from sex discrimination." *Williams*, 477 F.3d at 1300. A § 1983 action "based on the Equal Protection Clause" is "available to plaintiffs alleging unconstitutional gender discrimination in schools." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009). This protection against gender discrimination includes the right to be free from sexual harassment and abuse by state actors, including those at public schools. *See Hill v. Cundiff*, 797 F.3d 948, 979 (11th Cir. 2015) (recognizing the "clearly established" principle that "deliberate indifference to sexual harassment is an equal protection violation"); *cf. Cross v. Alabama*, 49 F.3d 1490, 1507 (11th Cir. 1995) ("Appellees have a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment."). Here, for the same reasons stated under the

Court's Title IX analysis, Doe plausibly alleged that she was the victim of harassment and abuse because of her sex, that Clarke officials had knowledge of the harassment and abuse through credible reports against Bouchard, and that these officials acted with deliberate indifference towards those reports.

The District argues that Doe failed to allege a similarly situated comparator or any other facts that would show that the District discriminated against her because she was female.  But comparators, while helpful, are not required to show discrimination in the context of sexual harassment.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998) (explaining that in the context of workplace sexual harassment, courts may infer discrimination "because of sex" based on explicit or implicit proposals of sexual activity, gender-specific actions or conduct, or comparator evidence).  Here, Doe plausibly alleged that Bouchard targeted her for harassment and abuse because she was a girl.  Doe alleges that Bouchard immediately singled out Doe because she resembled a female character from an anime show he watched about a man who becomes a teacher based on his perception that teachers exert a strong romantic influence over their female students.  Further, Doe claims that Bouchard informed Doe that he had raped teenage girls in the past and had become a teacher to have affairs with his students.  Am. Compl. ¶ 29.  Bouchard also allegedly called Doe gender-specific derogatory terms, such as

"seductress" and "whore."  *Id.* ¶ 30.   Finally, Doe alleges that Bouchard spent months grooming Doe, propositioned her for sex numerous times, sexually assaulted her on multiple occasions, and eventually raped her.   The Court thus finds that Doe adequately alleges discrimination because of her gender.

Doe also alleges that despite receiving multiple reports that Bouchard was behaving inappropriately with Doe and had sent inappropriate sexual material to another student, Yuran, Means, and Duke took no action to investigate the allegations.   Yuran and Means instead mandated that Doe spend more time with Bouchard as her official after-school tutor.   Those allegations are sufficient to show deliberate indifference to sexual harassment and abuse and are thus adequate to survive the present motion to dismiss. Therefore, the Court denies the District's motion to dismiss Doe's equal protection claim.

Turning to Doe's due process claim, the Court understands the claim to be a substantive due process claim based on Bouchard's alleged sexual abuse of Doe.   The Supreme Court has stated, in a different context, that if a constitutional claim is covered by an explicit textual source, then that source *must* guide the analysis of the claim and not the more "generalized notion of 'substantive due process.'"   *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)

("*Graham* . . . requires that if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Because the Court finds that the Equal Protection Clause provides an avenue for Doe's claims, the Court grants the District's motion to dismiss Doe's substantive due process claims.

     *2.   Does Doe allege a basis for District liability?*

     The District argues that even if Doe alleged that Bouchard violated her constitutional rights, she did not allege a basis for holding the District liable.  The District may not be held liable under § 1983 based solely on Bouchard's actions.  *Monell*, 436 U.S. at 694.  Rather, the District may be held liable only if a constitutional deprivation results "from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law."  *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1276 (11th Cir. 2000).  Doe does not allege that the District had a formal policy condoning teacher-on-student sexual abuse.  Nevertheless, the District may still be liable under § 1983 based on a custom of deliberate indifference to abuse or the constitutionally offensive actions of a final policymaker.

With these principles in mind, Doe argues that by ignoring the repeated allegations against Bouchard, District officials, including Yuran, Means, and Duke, demonstrated deliberate indifference to Bouchard's alleged abuse of Doe.  The District argues that only the local board of education can act as a final policymaker for school districts under Georgia law and that Doe has not alleged a specific act of the board that condoned Bouchard's unconstitutional conduct.  It is true that under § 1983, municipalities may only be held liable for acts or policies of individuals to whom the municipality delegated final policymaking authority in a particular area so long as the act or policy is not reviewable by a higher decision-making authority.  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1291 (11th Cir. 2004) (citing *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) (per curiam)).  In assessing whether an individual decision maker's act or policy is "final"—that is, unreviewable—there must be an actual "opportunity" for "meaningful" review.  *Id.* at 1292 (internal quotation marks omitted) (quoting *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1295 (11th Cir. 2000)).  This inquiry depends not only on state and local law, but also local custom and the particular facts of the case.  *Id.*  Because this inquiry is fact-intensive, the Eleventh Circuit has described identifying and proving that an individual is a final policymaker as an

"evidentiary standard" and not a pleading requirement.  *Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016).

Here, the District's argument ignores Eleventh Circuit precedent recognizing that lower-level school officials can be final policymakers when their decisions are not subject to meaningful review by the local board.  For example, in *Holloman*, the Eleventh Circuit held that a school principal could be a final policymaker in some contexts.  370 F.3d at 1293.  In that case, the principal had sentenced a student to three days of detention, a punishment that would have precluded the student from attending his own graduation.  *Id.*  Without enough time before graduation to appeal the punishment to the board, the student accepted a "spanking" from the principal in lieu of detention.  *Id.*  Reversing the district court's summary judgment in favor of the school board, the Eleventh Circuit held that both decisions by the principal were "final" for purposes of § 1983 liability.  *Id.* at 1293, 1295. The court reasoned that because the board could not meaningfully review the principal's punishments "as a practical matter"—because there was not enough time to carry out the appellate process and because corporal punishment could not be undone—the principal was a final policymaker.  *Id.* at 1293.  Therefore, lower-level school officials may be final policymakers in some contexts.

In her complaint, Doe plausibly alleged that Means, Yuran, and Duke were final policymakers for the District.  Doe alleges

that Yuran was the highest-ranking official at Clarke, with authority to investigate allegations of teacher sexual harassment and take immediate corrective measures to protect students during the investigation. Doe also alleges that Means was the District's superintendent, with authority to investigate allegations of teacher sexual harassment and take immediate corrective measures to protect students during the investigation. And Doe alleges that Duke was a human resources administrator, with authority to investigate allegations of teacher sexual harassment and take immediate corrective measures to protect students during the investigation. Nothing in Doe's complaint suggests that there was an actual opportunity for meaningful review when these three individuals decided not to investigate any of the reports about Bouchard's conduct. Thus, Doe adequately alleged that they were final policymakers for the District for purposes of the handling of reports of teacher sexual harassment or abuse of a student.

The District argues that even if Yuran, Means, and Duke were its final policymakers, Doe did not sufficiently allege that there was a custom of deliberate indifference to abuse because the District accepted Bouchard's resignation as soon as it learned of the sexually inappropriate nature of the text messages exchanged between Bouchard and Doe. To prove § 1983 liability against a municipality based on custom, a plaintiff must show "a widespread practice that, 'although not authorized by written law or express

municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law."'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)).  The Eleventh Circuit has recognized that a municipality's failure to correct constitutionally offensive actions of its employees can establish a custom or policy if the municipality "tacitly authorizes" the constitutionally offensive actions or exhibits "deliberate indifference" towards the misconduct. *Griffin*, 261 F.3d at 1308 (internal quotation marks omitted) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)).

Here, Doe alleges a yearlong pattern of sexual harassment and abuse by Bouchard against Doe.  Doe alleges that students made multiple reports to Yuran throughout the school year stating that Bouchard was spending time with Doe alone in his closet and hallway during class time.  Although the District's administration knew that Bouchard had sent sexually inappropriate messages to a student in the past, Yuran and the administration did nothing and even mandated that Doe spend time alone with Bouchard during her lunch hour and in tutoring after school.  At least one teacher reported Bouchard to Clarke administration for his inappropriate interactions with Doe.  Again, Yuran did nothing—no investigation or other action.  Soon after, Duke learned of inappropriate text

messages exchanged between Bouchard and Doe and did nothing to investigate nor did she take any action. Yuran and Means were later alerted to inappropriate text messages between Bouchard and Doe, but they did not act until further messages were revealed. These failures resulted in Bouchard's continued abuse of Doe and eventual rape after an after-school tutoring session mandated by Yuran. These allegations, if true, point to a pattern of deliberate indifference to abusive behavior on the part of the District. They thus are sufficient to establish a custom of deliberate indifference to credible reports of abuse for purposes of the present motion. Accordingly, the Court finds that Doe adequately alleged a basis for holding the District liable for Bouchard's alleged conduct. The District's motion to dismiss Doe's § 1983 equal protection claim is denied.

CONCLUSION

For the foregoing reasons, the District's motion to dismiss (ECF No. 6) is granted as to Doe's due process claim but denied as to her Title IX claim and her equal protection claim. Because the Court declined to dismiss Doe's underlying claims, Doe's claim for attorney's fees under O.C.G.A. § 13-6-11 survives dismissal.

IT IS SO ORDERED, this 24th day of October, 2022.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA