```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                        ATHENS DIVISION

JANE DOE,                        *
        Plaintiff,               *
vs.                              *      CASE NO. 3:22-cv-47 (CDL)
CLARKE COUNTY SCHOOL DISTRICT,   *
        Defendant.               *
```

O R D E R

Plaintiff Jane Doe alleges that she was sexually abused by her teacher, Maurice Bouchard, when she was a ninth-grade student at Clarke Central High School ("CCHS") in Athens, Georgia. Doe asserts claims against Defendant Clarke County School District (the "District") under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and 42 U.S.C. § 1983. The District moved for summary judgment on Doe's claims. For the reasons that follow, the District's summary judgment motion (ECF Nos. 25 & 26) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence

is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Doe, the record reveals the following facts.

Jane Doe was a student at CCHS in Athens, Georgia in 2016 and 2017. On the first day of school, Doe met Maurice Bouchard, her biology teacher and eventual abuser. Prior to enrolling at CCHS, Doe had a history of mental health struggles, such as bulimia, anxiety, and Obsessive Compulsive Disorder ("OCD"). Soon after the school year began, Bouchard began grooming Doe and exploiting her mental health weaknesses such as her eating disorder.

Bouchard's grooming quickly escalated to sexual abuse. The abuse involved fondling, oral sex, digital penetration, and vaginal intercourse and occurred many times throughout the 2016-2017 school year, including in Bouchard's classroom storage closet and in his classroom. During this time period, Doe's mental health significantly deteriorated, and her eating disorder became more pronounced. She was admitted to the hospital on one occasion due

to concerns regarding suicidal ideation. Further, for the first time in her academic career, Doe began failing classes.

Due to Doe's difficulties, Doe's parents, teachers, and administrators worked together to develop a series of 504 plans to support Doe, manage her conditions, and allow her to continue participating in school at CCHS. The various iterations of the 504 plan included interventions such as scheduling modifications, teacher support for avoiding perfectionism when turning in assignments, and supervision at mealtimes and bathroom breaks to avoid purging. Bouchard played an integral role in the development of Doe's 504 plan. During one 504 meeting, Bouchard recommended that he tutor Doe and that she spend an additional "Study Skills" class period with him. The District changed Doe's schedule based on Bouchard's recommendation and also mandated that Doe eat lunch with Bouchard in his classroom each day as part of the 504 plan.

Bouchard's abuse continued into the summer following the 2016-2017 school year. During that summer, Doe was hospitalized for two months due to the exacerbation of her bulimia. While Doe was hospitalized, she and Bouchard spoke on the phone each day and Bouchard sent her gifts, paintings, and love letters. The two also communicated regularly via the CCHS email system until Bouchard instructed Doe to contact him at his personal email address since their communications were no longer school-related. While Doe was hospitalized, hospital staff discovered personal

emails exchanged between Doe and Bouchard. On one occasion, a hospital staff member noticed that Doe had thirty-seven unread text message notifications from Bouchard. When asked about the texts, Doe informed the staff member that Bouchard had been sending her personal texts throughout the day for months.

The staff member alerted Dr. Anna Morgan, the District's Director of School Psychology, that the staff member was concerned because Doe was texting with a teacher. The report did not include any additional information about the nature of the texting or the identity of the teacher. Dr. Morgan forwarded this "potential HR/Teacher/Student concern" to Marie Yuran, the principal of CCHS, who advised her to refer the issue to Lynn Duke, the Executive Director of Human Resources and Information Services, for investigation. Duke Dep. Ex. 7, Bouchard Investigative File CCSD 000030, ECF No. 33-7 at 9. Morgan and Duke both attempted to contact the hospital to get more information, but the hospital did not return their calls. At that point, Duke called Doe's mother to ask whether she was aware that a teacher was texting Doe. Doe's mother informed Duke that the teacher was Bouchard, that Bouchard had recovered from an eating disorder like her daughter's, and that Bouchard had "saved [Doe's] life."[1] *Id.* During this phone

---

[1] Doe objects to this testimony on grounds of hearsay. But these statements are not being offered for the truth of the matter asserted; instead, they are offered to show the effect of these statements on Duke and to explain her subsequent conduct. Further, Doe did not point to any testimony from the declarant, Doe's mother, contradicting this

4

call, Duke mentioned a previous report of Bouchard texting with another student and cautioned Doe's mother that people "are not always as they appear."[2] Doe's Mother's Dep. 45:20-21, ECF No. 41-3; Bouchard Investigative File CCSD 000030. Despite finding Bouchard's communications with Doe to be "unusual," "serious," and "potentially inappropriate," Duke declined to investigate after her conversation with Doe's mother. Duke Dep. 73:14-74:2, 75:5-8, ECF No. 33. Duke updated Yuran with her findings.

When Doe's treatment concluded in July 2017, Bouchard drove Doe, her mother, and her brother back home from the hospital, which was located in North Carolina. Doe returned to CCHS in August. Soon after the school year started, Doe left class early after appearing to have an injury on her arm. When Doe did not show up to her next class, CCHS staff searched the school building for Doe. She was eventually found in Bouchard's classroom. After that incident, Yuran met with Bouchard and instructed him to cease communications with Doe and to not "cross professional

---

statement. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) ("If, however, the declarant has given sworn testimony during the course of discovery that contradicts the hearsay statement, we may not consider the hearsay statement at the summary judgment phase"). Accordingly, the Court will consider Duke's testimony regarding Doe's mother's statements for purposes of summary judgment.

[2] The District objected to the admissibility of Doe's mother's testimony stating that Duke informed her that Bouchard was the subject of a prior report. At oral argument, the District explained that the basis for the objection was hearsay. The Court finds that Duke's statement was offered to show Duke's knowledge of a prior report against Bouchard and not the truth of that report. Accordingly, the Court will consider this testimony for purposes of summary judgment.

boundaries." Bouchard Investigative File CCSD 000049.  During the meeting, Bouchard disclosed that he had driven Doe and her family home from North Carolina after Doe was discharged.  She counseled him that it was more appropriate to use school resources, such as through social work or counseling, if a family requested transportation than to drive the family home himself.

On August 25, 2017, a student provided Yuran with a set of text messages between Doe and Bouchard.  The text messages, while not overtly sexual, mentioned "love" and physical contact between Bouchard and Doe.  Bouchard Investigative File CCSD 000035-46. Duke testified that Bouchard was "clearly . . . being inappropriate" in these messages "to a very memorable level."  Duke Dep. 82:4-82:18.  The same day Yuran received the text messages, Yuran, Duke, and Sherri Freeman, the Associate Superintendent of Human Resources and Student Services, met with Bouchard.  Bouchard denied having sexual contact with Doe.  He also denied being alone with Doe and claimed that he had only seen her outside of the school day when her parents were present.  The officials directed Bouchard to cease contact with Doe or any member of her family, to not contact any students except through the online homework portal, and to block all students from text messaging him.  Bouchard acknowledged these directives in writing.  The officials further instructed Bouchard to contact Yuran if Doe attempted to make contact with him.  Yuran subsequently notified Doe's parents.

That weekend, on August 27, 2017, Doe's mother provided Yuran with an additional set of text messages between Doe and Bouchard that were sexually explicit in nature. Yuran instructed Bouchard to report to the board office the next day instead of CCHS. Bouchard resigned in lieu of termination on August 28. That same day, the District filed a complaint against Bouchard with the Georgia Professional Standards Commission.

## DISCUSSION

Doe asserts claims against the District under Title IX and § 1983. The District moves for summary judgment on both claims. The Court addresses each claim in turn.

### I. Title IX Claim

Doe contends that the District was deliberately indifferent to Bouchard's sexual abuse of her in violation of Title IX. School districts are liable for damages for a teacher's misconduct under Title IX when "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998). The District argues that it is entitled to summary judgment because Doe has both failed to demonstrate that it had actual notice of the abuse and that it was deliberately indifferent to it. The Court addresses both arguments in turn.

To establish that the District had actual notice of Bouchard's sexual abuse of Doe, Doe must first identify an "appropriate person" under Title IX—that is—"a school district official with the authority to take corrective measures in response to actual notice of sexual harassment." *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1254 (11th Cir. 2010). Second, Doe must establish that the "substance of th[e] actual notice" was "sufficient to alert the school official of the possibility of" her harassment. *Id.* The District argues that it did not have actual notice that Bouchard was potentially sexually abusing Doe until Doe's mother sent Yuran the second set of text messages. Doe argues that, based on the totality of information known by the District, she has pointed to sufficient evidence that the District knew that there was a possibility that Bouchard was sexually abusing her.

Based on existing Circuit precedent, the Court finds that Plaintiff has failed to create a genuine factual dispute on the issue of whether the District knew of the possibility that Bouchard was sexually abusing Doe prior to the first set of text messages emerging. The evidence establishes that before the concerned student reported the first set of text messages to Yuran, the District knew, at most, that Bouchard and Doe's relationship was inappropriately close. Prior to the concerned student reporting the first set of text messages to Yuran, the District knew the following: (1) that another parent had reported Bouchard for making

8

"inappropriate comments" to students, including that his "roommate" had a pornography addiction;[3] (2) that Bouchard had texted a student on at least one prior occasion; (3) that a hospital staff member had contacted District officials because they were concerned that Doe was "texting" with a teacher; (4) that Bouchard had driven Doe and her family back home from a hospital in North Carolina; and (5) that Doe had been found in Bouchard's classroom after missing class. The Court finds these facts insufficient to alert the District of the possibility that Bouchard was sexually abusing, or at risk of sexually abusing, Doe. Even construing these facts in the light most favorable to Doe, they show that the District was aware of an inappropriately close relationship between Bouchard and Doe, but not one that was sexual in nature.

While Doe points to evidence that some teachers were aware that Bouchard and Doe had been alone in a classroom, and even that Bouchard and Doe had a close relationship, Doe did not point to evidence that any teacher, or any District official, was concerned that Bouchard was sexually abusing Doe prior to the first set of text messages. True, the District acknowledged that Duke knew

---

[3] The District objected to this statement and made clear at oral argument that the basis for the objection was hearsay. The Court finds, however, that Doe pointed to the email to show the District's knowledge of a prior complaint against Bouchard, not for the truth of the email's contents. Accordingly, the Court will consider the email for purposes of summary judgment.

that the relationship was "potentially inappropriate" after a member of the hospital staff reported her concern. But Doe did not point to evidence prior to the first set of text messages emerging that any District official or employee suspected that Bouchard was sexually abusing Doe. Bouchard had been counseling Doe through bulimia. Given that Bouchard had also struggled with bulimia in the past and that Doe's mother reassured Duke that there was nothing to be concerned about, it is understandable that Bouchard and Doe's close relationship did not immediately raise red flags, let alone actually notify the District that it was possible that Bouchard was sexually abusing Doe.[4]

As to the first set of text messages, the Court agrees that a reasonable jury could find that these messages—in combination with the other information known by the District—constitute actual notice that there was a possibility that Bouchard was sexually abusing Doe given their references to "love" and physical contact. But Doe failed to demonstrate that the District was deliberately indifferent in response to those messages. Rather, the District

---

[4] The Court does not reach this conclusion lightly. It is a close call as to whether red flags should have been raised. The numerous texts unrelated to school from an adult teacher to an underage student arguably should put an administrator on notice that such inappropriate personal communication may be a sign of illegal sexual harassment. And perhaps a jury should evaluate this circumstantial evidence rather than the Court dismissing it as a matter of law. But this argument is unsupported by existing Eleventh Circuit precedent, which this Court is duty bound to follow. *See J.F.K. v. Troup Cnty. Sch. Dist.*, 678 F.3d 1254 (11th Cir. 2012).

10

pointed to evidence that Yuran, Duke, and Sherri Freeman, Associate Superintendent of Human Resources and Student Services, reprimanded Bouchard the same day they learned about the messages. They instructed Bouchard that it was inappropriate for teachers and students to communicate in such an overly familiar way, to which Bouchard responded that he was trying to support Doe through her recovery from her eating disorder. They specifically inquired as to whether Bouchard had ever had sexual contact with Doe, which Bouchard denied. Yuran ordered Bouchard to cease contact with Doe and her family, to block all students from text messaging him, and to let Yuran know if Doe tried to contact him. Bouchard agreed to comply with Yuran's instructions in writing. Finally, Yuran contacted Doe's parents, who less than two days later, made Yuran aware of an additional set of text messages that were sexual in nature. After receiving that second set of text messages, Yuran instructed Bouchard not to come to school the next day and to instead report to the board office. There, Bouchard resigned in lieu of termination. That same day, the District filed a formal complaint against Bouchard with the Georgia Professional Standards Commission so that he would be barred from teaching. Based on these facts, no reasonable jury could conclude that the District's response to learning about either set of text messages was "clearly unreasonable in light of the known circumstances." *Sch. Bd. of Broward Cnty.*, 604 F.3d at 1259 (quoting *Davis ex rel. LaShonda D.*

11

*v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Accordingly, the District's motion for summary judgment on Doe's Title IX claim is granted.

## II. Section 1983 Claim

The District also seeks summary judgment on Doe's § 1983 claim. To prove § 1983 liability against a municipality based on custom, a plaintiff must show "a widespread practice that, 'although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law."'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)). A municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy "'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)).

Doe contends that the District had a custom of responding inadequately to sexual harassment complaints. Doe points to two 2018 audits describing the District's failures in handling two instances of sexual misconduct allegations that occurred in the District contemporaneously with Doe's abuse. Although the audits

12

demonstrate the District's significant shortcomings in the handling of the two instances of sexual misconduct allegations, they do not evince that the District was deliberately indifferent in Doe's case. Doe did not otherwise point to evidence that the District had a custom of responding inadequately to sexual harassment complaints during the time of Doe's abuse.[5] And as the Court explained above, the evidence, when viewed in Doe's favor, does not demonstrate that the District or its officials were deliberately indifferent to the possibility that Doe was being sexually abused. Accordingly, the District is entitled to summary judgment on Doe's § 1983 claim.

CONCLUSION

For the foregoing reasons, the District's motion for summary judgment (ECF Nos. 25 & 26) is granted.

IT IS SO ORDERED, this 5th day of March, 2024.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[5] Doe also points to testimony from the District's Title IX Director acknowledging that the District was aware of at least two other instances of teacher-on-student sexual misconduct, but both incidents occurred "well after" Bouchard's termination. Padgett Dep. 180:7–21, ECF No. 36.

13