```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION
                _____
```

```
JANE DOE, PLAINTIFF        : 3:22-CV-00047-CDL

        VS.                : MARCH 01, 2024

CLARKE COUNTY SCHOOL DISTRICT : ATHENS, GEORGIA
DEFENDANT
_____
```

```
              TRANSCRIPT OF THE PRETRIAL CONFERENCE
               BEFORE THE HONORABLE CLAY D. LAND,
                 UNITED STATES DISTRICT JUDGE

                       APPEARANCES:
```

FOR THE PLAINTIFF:

MS. HANNAH SBAITY

4200 NORTHSIDE PKWY NW

STE BLDG 1

STE 100

ATLANTA, GA 30327

404-961-7655

Email: hannah@pennlawgroup.com


FOR THE DEFENDANT:

MS. ALLISON C AVERBUCH

191 PEACHTREE ST NE STE 2900

ATLANTA, GA 30303

404-954-5003

Email: aaverbuch@hallboothsmith.com

_____

JOAN DRAMMEH, CVR, CCR

JOAN_DRAMMEH@GAMD.USCOURTS.GOV

9:32:17AM  1                    --- *PROCEEDINGS* ---

2    Friday, March 01, 2024 09:46:54

3              COURT SECURITY OFFICER:  All rise, the United States

4    District Court for the Middle District of Georgia is now in

5    session.

6              THE COURT:  Please be seated, good morning.  I feel

7    the need to explain my lack of proper uniform this morning.

8    In all the rush to get up here yesterday to beat the Atlanta

9    traffic yesterday afternoon, which was unsuccessful by the

10   way.  I left my robe at home.  I have colleagues that leave

11   robes up here, but I don't know were they've been so I'm not

12   going to wear one of their robes.  You just have to excuse the

13   lack of uniform.  In fact, the history of the robe, judges

14   have not always worn robes; that was the tradition in England

15   where they wore robes and wigs.  In the early days when we

16   were declaring our independence from England, most judges did

17   not wear robes in colonial America as I understand it in

18   protest of the practice that they had been subjected to in

19   England.  And then later on I think the Supreme Court

20   originally probably did wear robes, but the trial judges were

21   a little more vocal in their opposition to England maybe than

22   the Supreme Court.  My understanding is they didn't start

23   wearing robes until much later on.  It was developed as a

24   tradition and not a statutory or legal requirement.  Okay.

25              THE CLERK:  Did you also forget your wig?

9:49:44AM 1          THE COURT:  You are probably in more need of a wig

2  than I am Mr. Gunn.  Call our case for this morning.

3          THE CLERK:  Yes, sir, Your Honor.  This case is

4  3:22-CV-00047-CDL Jane Doe v Clarke County School District.

5          THE COURT:  All right, let's identify the

6  participants who are present first of all for the Plaintiff.

7          MS. SBAITY:  Hi, good morning, Hannah Sbaity for the

8  Plaintiff.

9          MR. HADEN:  John Haden for the plaintiff typing

10  toward.

11          THE COURT:  Welcome.

12          MR. HADEN:  Good morning, Your Honor, John Haden for

13  the Plaintiff.  I am being mentored by Ms. Sbaity.

14          MS. AVERBUCH:  Good morning Your Honor, Allison

15  Averbuch for the Defendant.

16          MR. BRITT:  And Russel Britt, Your Honor.

17          THE COURT:  Welcome, the Plaintiff requested oral

18  argument in this matter so I granted the oral argument.  Do

19  you pronounce your name --

20          MS. SBAITY:  Sbaity, yes, Your Honor.

21          THE COURT:  I noticed there was another lawyer in

22  the case that recently withdrew.  Are you the one that

23  requested the oral argument or was it the person that

24  withdrew?

25          MS. SBAITY:  It's me, Your Honor.

9:51:17AM 1    THE COURT:  I granted your request for oral argument

2 and although it's the Defendant's motion for summary judgment,

3 I'm going to dive right in because I have read all of the

4 briefing; which I think it makes the issues that I've got to

5 decide fairly clear.  But Ms. Sbaity I have got a couple of

6 questions for you to start off.  You can keep your seat, speak

7 microphone in the microphone, or whatever you prefer.  What I

8 want to hone in on is the specific facts that you contend

9 support the conclusion that the school district was

10 deliberately indifferent.

11    Obviously, the conduct by this teacher is

12 inexcusable.  The real issue however is the school district's

13 liability and they can't be liable based on respondeat

14 superior agencies principles as you well know, but they can be

15 liable if they were made aware of this teacher's inappropriate

16 conduct; and they were deliberately indifferent to it.  In

17 other words, knowing that it existed they essentially ignored

18 it.  So that seems to be the challenge that you have is to

19 point the Court to sufficient facts which could create a

20 genuine dispute with regard to that deliberate indifference.

21    And I will give you the opportunity at this time to

22 point the Court to those specific facts that support a finding

23 of deliberate indifference.

24    MS. SBAITY:  Thank you, Your Honor, can that be part

25 of my presentation up here with a PowerPoint?

9:53:32AM 1          THE COURT:  Well, it can be however you wish to make

2     the presentation.  I've told you what is important to me.  So

3     is a good advocate it would be best for you to hone in on what

4     is important to me, and not distract from what is important to

5     me based on pointing to other things that are not important to

6     me, even if that means you may have to adjust your preprepared

7     presentation.  But that's what being a good lawyer is all

8     about, but I am going to let you do it however, you want.

9     Just keep in mind I have kind of alerted you as to what I am

10    interested in.

11          MS. SBAITY:  Noted thank you.

12          THE COURT:  You may go forward.

13          MS. SBAITY:  I have some slides for you if I may

14    approach?

15          THE COURT:  Okay.

16          MS. SBAITY:  And I have some copies for opposing

17    counsel.

18          THE COURT:  Okay.

19          MS. SBAITY:  Thank you, Your Honor.  I am going to

20    focus in on deliberate indifference.  As part of that

21    discussion I am going to touch on the notice that the school

22    district had and how they were deliberately indifferent.  Just

23    for technical matters how do I switch; do I click on the

24    screen?

25          THE CLERK:  You have to do it from your laptop.

9:55:30AM 1        MS. SBAITY:  That's fine.  Mr. Haden will do it for

2  me.  Obviously, we are touching on the first issue in this

3  case only.  Specifically, under Gepser [phonetic] it's that an

4  appropriately person acted deliberately indifferent to the

5  harassment.  And I feel that it's appropriate to address who

6  the appropriate person or persons were who had knowledge

7  because that is part of the analysis.  And it wasn't really

8  touched on by the Defendant in their motion, but it is crucial

9  to this analysis in determining whether it is a genuine issue

10  for material fact for the jury.

11        It's a supervisor with authority to take corrective

12  action.  And here we are alleging that these persons did not

13  take corrective actions and therefore acted deliberately

14  indifferent.

15        THE COURT:  So who are the appropriate persons in

16  your view?

17        MS. SBAITY:  There's five of in our view on this

18  slide.

19        THE COURT:  Any disagreement by the Defendant that

20  these persons are "the appropriate persons"?

21        MS. AVERBUCH:  Yes, Your Honor.

22        THE COURT:  There's a dispute.

23        MS. AVERBUCH:  Yes.

24        THE COURT:  Who does the Defendant contend are the

25  appropriate persons?

9:56:51AM 1          MS. AVERBUCH:  We contend that the appropriate

2      persons are the Clarke Central High School Principal, her name

3      is Maria Uraian [phonetic].  The Human Resources Director Lynn

4      Duke, she works for the district.  As well as the

5      Superintendent at that Demon Means.  We dispute that the

6      Clarke Central teachers Michael Gatlan and Thomasina Miranda

7      are appropriate persons.  We will address this later, but it's

8      our position that the Court doesn't need to reach this issue

9      because there was no actual notice for those teachers

10     regardless.

11          THE COURT:  Go ahead Ms. Sbaity.

12          MS. SBAITY:  Thank you.  This is where we disagree.

13     Under KB v. Daleville City Board of Education, Eleventh

14     Circuit case, it is a fact-based inquiry whether somebody is

15     an appropriate person.  This is just another example of where

16     there is a genuine issue of material fact for the jury.  We're

17     starting off with Superintendent Means.  The Defendant doesn't

18     dispute this.  We're going to move on from here.  Same thing

19     with the Human Resources Lynn Duke and Principal Maria Uraian.

20     But where it comes to Clarke Central High School teachers

21     Michael Gatlan and Thomasina Miranda; that is where the

22     dispute is.

23          THE COURT:  What did they know about the

24     inappropriate sexual contact between the teacher and Jane Doe?

25          MS. SBAITY:  Sure.  Their knowledge differed.

9:58:34AM 1    Michael Gatlan had knowledge of Jane Doe spending alone time

2    in his classroom where the abuse happened.  In fact, she was

3    absent in the 2017 second semester 90 times.  And of those 90

4    times that she was at school that she was marked absent from

5    classes, I think the record reflects it was 15 times from his

6    class.  And there is evidence as I will show in the slides of

7    e-mail correspondence with the principal talking about her

8    absence and they're trying to locate Jane Doe.  And the fact

9    that they found her in Bouchard's classroom, the perpetrator.

10              THE COURT:  What did this teacher do when she was

11    absent?

12              MS. SBAITY:  Michael Gatlan, he helped locate the

13    student.  I will show in the slides later on there was a

14    meeting Bouchard to establish boundaries.

15              THE COURT:  Assuming Gatlan and Miranda are

16    appropriate persons, how did their actions contribute to

17    deliberate indifference?

18              MS. SBAITY:  Yes, Your Honor.  By in some instances

19    their lack of reporting.

20              THE COURT:  What should Gatlan have reported?

21              MS. SBAITY:  There are policies that the school

22    district has although there were audits that were conducted by

23    third parties showing there was ineffective procedures.

24              THE COURT:  No, specifically, what did Gatlan learn

25    that should have prompted him to notify our do something about

10:00:22AM 1    it?

2              MS. SBAITY:  That Jane Doe was spending isolated

3      time away from her classes, specifically, just in Bouchard's

4      classroom.

5              THE COURT:  Gatlan knew specifically how many times

6      she was there or just that she was absent from his class?

7              MS. SBAITY:  He knew from his class.  It's also on

8      her attendance record how many times she was absent total.

9              THE COURT:  Why is Gatlan as a teacher?  Why is he

10     responsible for reviewing her attendance record and doing

11     anything other than reporting her as absent from his class in

12     trying to find out why she was absent from his class?  Why

13     does he have responsibility for her missing other classes?

14             MS. SBAITY:  I believe it falls under the same

15     answer why he is a responsible mandatory reporter.  He is

16     monitoring Jane Doe, a minor, while she is in his classroom

17     under his supervision.  So anything that happens or that he

18     has knowledge of, he is by law mandated to report it.  Same

19     thing with Thomasina Miranda.

20             THE COURT:  Where is his obligation to monitor and

21     report that she is in Bouchard's classroom is my question.  I

22     understand that he's got a duty with regard to her being in

23     his classroom or not in his classroom, but where is the duty

24     that he has as to her being in some other teacher's classroom

25     unless he's got notice that something inappropriate is

10:02:02AM 1    happening in those other classrooms?

2              MS. SBAITY:  That's where the fact question comes

3        in.  There was a lot --

4              THE COURT:  If he does not have notice that

5        something inappropriate is happening in another teacher's

6        classroom; is it not his duty to pursue that?  In other words,

7        his duty depends on whether he has got some notice of

8        something inappropriate happening in one of these other

9        classrooms, correct?

10             MS. SBAITY:  Of course, because that would be within

11       the --

12             THE COURT:  What did he have notice of that was

13       happening and Bouchard's classroom that should have tipped him

14       off that he should have gone up the line and done something

15       about it?

16             MS. SBAITY:  That Jane Doe wasn't attending her

17       classes, specifically in his classroom, when Bouchard has a

18       track record of being inappropriate with students.

19             THE COURT:  Did Gatlan know that?

20             MS. SBAITY:  That's a fact question, Your Honor.

21             THE COURT:  The absence of whether he knew it or

22       didn't know it is not a fact question.  There's got to be some

23       fact that either shows he knew it or from which someone could

24       reasonably infer that he knew it.  And I mean, quite frankly,

25       your case is not very strong as to these two teachers.  It may

10:03:26AM 1    not be strong as to the other people, but you've got to point

2    the Court to some facts that show that these people were on

3    notice that this student was in this situation where teacher

4    was acting inappropriately; and then that they just ignored it

5    and were deliberately indifferent; that's the problem here.

6    So as I said at the beginning, it would be helpful to the

7    Court for you to specifically point out with regard to each

8    person you think was deliberately indifferent how they were

9    deliberately indifferent.  Otherwise, I'm getting confused on

10   this other stuff that may be important to a general analysis

11   of the claim, but it is really not what I need to hone in on

12   for summary judgment purposes.  But go ahead.

13           MS. SBAITY:  Sure.  Hopefully, we can clear that up.

14           THE COURT:  For example, can you point to me for

15   this particular person 1, 2, 3, 4 is what they knew; 1, 2, 3,

16   4 is what they did not do?  That would be a helpful way for me

17   to have a grasp of the deliberate indifference that you

18   allege.

19           MS. SBAITY:  Yes, Your Honor.  I will make sure

20   those are displayed on the screen.  If you could please go to

21   the next?  This is a general timeline of the abuse which shows

22   who knew what when.  And then I'll get into the specifics on

23   the other slides.  If we're talking on June 14th, 2017, that

24   was the first time human resources and the principal knew that

25   while Jane Doe was at the hospitalization at Veritas; that she

10:05:35AM 1  was receiving inappropriate text messages.

2        THE COURT:  Who told them that?

3        MS. SBAITY:  Veritas communicated with the school.

4  This slide shows specifically in February 2016 --

5        THE COURT:  Is this where the nurse saw that she was

6  texting the teacher?

7        MS. SBAITY:  Yes, Your Honor.

8        THE COURT:  That was communicated to the persons at

9  the school.

10        MS. SBAITY:  Yes, Your Honor.

11        THE COURT:  Was there any substance as to what those

12  texts were or was it just we see a student texting a teacher?

13        MS. SBAITY:  I have a screenshots of it.  If you

14  could go to the next.  So this is where -- This goes into the

15  deliberate indifference.

16        THE COURT:  I understand that, but was the

17  communication to the school by the hospital personnel:

18  There's texting going on between a student and a teacher;

19  thought you should know about it -- or did it go further and

20  say -- and we looked at the text and they said this or that;

21  which was it?

22        MS. SBAITY:  The nurse from Veritas called the

23  school and alerted them that there were text messages that

24  raised a potential concern between the student and the

25  teacher.

10:07:04AM 1        THE COURT:  See, that's my question.  You're talking

2  generally raised concern.  Did it raise concern because there

3  was communication between the teacher and the student; or to

4  it raise concern because of what was in the text messages?

5        MS. SBAITY:  From Jane Doe's mom's deposition

6  testimony she reports that when she spoke to the school about

7  these text messages -- because the school ended up calling

8  Jane Doe's mom -- they alerted her that he had a history of

9  this kind of behavior.

10        THE COURT:  Well, I'm going to get that in a minute.

11        MS. SBAITY:  Yes.

12        THE COURT:  As to the evidence with regard to what

13  the hospital told the school person, was any communication

14  relayed as to the substance of the text; or was it simply we

15  thought you should be aware that this student is texting with

16  a teacher?

17        MS. SBAITY:  There weren't any notes about the

18  actual substance, but there was a note made by the human

19  resources -- if you could go to the next -- There is a

20  potential HR teacher-student concern.  This is HR checking in

21  with Maria Uraian, the superintendent at the principal.  This

22  is something that they bumped up to something that they need

23  to investigate.

24        THE COURT:  So this school employee receives a

25  message from the hospital that there is texting going on

10:08:43AM 1    between Jane Doe and a teacher that could create concern.

2        MS. SBAITY:  Yes.

3        THE COURT:  That employee at the school did not

4    ignore the text.  But, in fact, bumped it up and said this may

5    be of concern.  There's texting going on between this student

6    and a teacher.  That certainly wouldn't be deliberate

7    indifference at that point; you would agree with that?  That

8    was an appropriate response.

9        MS. SBAITY:  I disagree.

10        THE COURT:  You don't think it was an appropriate

11    response for that employee to take that general information

12    that there's texting between Jane Doe and the teacher and bump

13    it up to somebody else with higher authority and say, look,

14    this could be concerning.  You don't think that was

15    appropriate.

16        MS. SBAITY:  I don't it's appropriate of how it was

17    handled from there.

18        THE COURT:  I'm asking you step-by-step.  Do you

19    think that step was inappropriate?

20        MS. SBAITY:  No, not that step.  No, Your Honor.

21        THE COURT:  And then when it got bumped up they

22    decided to inform the parent, correct?

23        MS. SBAITY:  Yes, Your Honor.

24        THE COURT:  Do you think it was inappropriate for

25    them to inform the parent?

10:10:05AM 1    MS. SBAITY:  Not that step, but that step in
2    isolation, yes.  Like just doing that, yes.
3         THE COURT:  We're going to get to all the steps, but
4    clearly them informing the parent was not evidence of
5    deliberate indifference; correct?
6         MS. SBAITY:  Correct.
7         THE COURT:  So the parent gave some explanation as
8    to why there may have been texting, correct?
9         MS. SBAITY:  Yes, Your Honor.
10        THE COURT:  Do you contend it was inappropriate for
11   the school district to consider that; what the parent told
12   them, in making their decision as to their next steps?
13        MS. SBAITY:  I don't think it was inappropriate to
14   consider it, but I --
15        THE COURT:  So what happened next?
16        MS. SBAITY:  This is the note that the employee made
17   about the phone call itself, about the texting.  And what's
18   written below after they notified Jane Doe's mom is that I
19   cautioned her that people are not always as they appear.  This
20   is where I was getting to about Jane Doe's mom giving
21   deposition testimony about the employee alerting her about
22   past behavior of Bouchard with students and texting.
23        THE COURT:  After they had the discussion with the
24   mom and the mom tried to at least suggest from her perspective
25   that she did not seem overly concerned; what did the school

10:11:42AM 1    district do next?

2              MS. SBAITY:  It left it alone.  It didn't

3    investigate it.  So what ended up happening was Bouchard

4    continued to contact her and continued to sexually abuse her

5    over the course of the time.

6              THE COURT:  When did the school district, when were

7    they next informed of a problem?

8              MS. SBAITY:  When she came back from Veritas.  Next

9    --

10             THE COURT:  So after the parent informed the school

11   district that she didn't have concerns, Jane Doe was still in

12   the hospital.

13             MS. SBAITY:  Yes, Your Honor.

14             THE COURT:  And is it your contention that the

15   teacher continued to sexually abuse Jane Doe while she was in

16   the hospital?

17             MS. SBAITY:  While she was in the hospital he would

18   send her pornographic videos and he did that on his private

19   e-mail.  So in the beginning of the slide show I had a

20   screenshot of an e-mail that he sent her saying:

21                      Hey, since it's not school-related

22                      business anymore how about you use my

23                      personal e-mail?  E-mail me at this

24                      e-mail.

25             And he gave her the e-mail address.  Jane Doe

10:13:15AM 1    testified that he was sending her pornographic videos at the

2    time.

3            THE COURT:  So while she was in the hospital, after

4    the school district learned of the texting, they continued the

5    texting.

6            MS. SBAITY:  Yes, Your Honor.

7            THE COURT:  Continued the communication by e-mail.

8            MS. SBAITY:  Yes, and text messages.  In one of the

9    notes there were like 37 missed text messages that the nurse

10   observed.

11           THE COURT:  But the mother during this time was well

12   aware that there was texting or messaging going on between

13   this teacher and her daughter.

14           MS. SBAITY:  She was.  But later in the nursing

15   notes while she was still hospitalized there were notes --

16   Before I move on there -- In HR's personnel Duke's deposition

17   she talks about how it was unusual, and she was concerned, and

18   she took it serious.

19           THE COURT:  Who was?

20           MS. SBAITY:  Lynne Duke from HR.  She said that when

21   she got the call about these allegations, it's phrased as

22   allegations.  She was concerned that it seemed unusual.  It

23   raised her awareness.  She took it seriously.  And she didn't

24   know what she could do from that point on.

25           THE COURT:  She's the one that bumped it up the

10:14:34AM 1    line.

2        MS. SBAITY:  Yes, Your Honor.

3        THE COURT:  Somebody up the line contacted the

4    parent.

5        MS. SBAITY:  She had a phone call with the parent

6    and that's where the mom said that she told her about the

7    history with this teacher and text messages.

8        THE COURT:  Notwithstanding that the mom didn't

9    express further concerns.

10       MS. SBAITY:  No, Your Honor.  The mom herself was

11   essentially groomed.  She has her own disabilities and he took

12   advantage of that.  He took advantage of both the mom and the

13   dad's disabilities when grooming their child as well.

14       THE COURT:  Is there any evidence that she was

15   sexually abused physically while she was in the hospital?

16       MS. SBAITY:  Physically, no, but she did inflict

17   self harm when she wasn't allowed to contact him.  When they

18   tried to cut off communication.

19       THE COURT:  Who tried to do that?

20       MS. SBAITY:  The hospital Veritas.  And another

21   thing is Veritas had several meetings with mom during family

22   sessions where they were highlighting the importance of

23   setting boundaries and backing a way from her mentor; and her

24   mentor being noted as Bouchard several places in the record.

25       THE COURT:  While she was in the hospital was trying

10:15:51AM 1    to cutoff the connection.

2         MS. SBAITY:  Yes, Your Honor.

3         THE COURT:  Then she gets released from the

4    hospital; what happens?

5         MS. SBAITY:  As she is released from the hospital he

6    goes back to having more contact with her because her schedule

7    was modified.  He played a part in her scheduling because she

8    had an IEP.  She would spend lunchtime in there and he would

9    pull her out of class.  She was found in his classroom alone.

10   That's where Thomasina Miranda comes in the picture as well.

11   Thomasina Miranda saw her on two separate occasions a lone in

12   the classroom with Bouchard.  And Thomasina Miranda had

13   actually confronted Bouchard about a conversation that the

14   principal had with him.

15        THE COURT:  Who is Miranda?

16        MS. SBAITY:  Thomasina Miranda is a teacher; that's

17   the second teacher --

18        THE COURT:  Is there any evidence that Miranda knew

19   of what had happened at Veritas?

20        MS. SBAITY:  There's nothing in the record that she

21   knew about that Veritas, but there's evidence in the record

22   that she knew that Bouchard had a meeting with the principal

23   about setting boundaries.  And that Bouchard had told her that

24   he was defiant and that he wasn't going to abide by that.

25   Bouchard also told Miranda that she was going to Jane Doe's

10:17:21AM

1    house in the middle of the night to take the demons out of

2    her; and that concerned Miranda.  Miranda didn't report that.

3            Another thing is Jane Doe testifies in her

4    deposition that Miranda actually told Bouchard when she

5    observed them in the classroom alone; that you're going to get

6    in trouble for this.  I'm paraphrasing, but I have the slides

7    with the testimony.  You're going to get in trouble for this.

8    You shouldn't be alone.  Something along those lines.

9            THE COURT:  What happens?  When does somebody

10   finally notify someone up the line of the problem after she

11   gets back from Veritas?

12           MS. SBAITY:  A student submits text messages to the

13   school, but that's not the first time the school had knowledge

14   there's was a problem.  When she was found to be alone in

15   Bouchard's classroom when she was supposed to be in the

16   teachers Michael Gatlan's classroom, the principal actually

17   had a meeting with Bouchard about setting boundaries.  So they

18   were put on notice right there that there were boundaries and

19   not to cross professional boundaries.

20           THE COURT:  When she was found in the teacher's

21   classroom not during his class, the principal learned of that.

22           MS. SBAITY:  Yes, Your Honor.

23           THE COURT:  The principal in response to that sat

24   down with Bouchard and said this needs to cease.  There needs

25   to be boundaries between teachers and students.

10:18:54AM 1      MS. SBAITY:  Yes, Your Honor.

2      THE COURT:  Is there evidence that after that

3  meeting Bouchard said something during that meeting to

4  indicate to the principal that he did not understand that

5  directive or was not going to comply with it?

6      MS. SBAITY:  Not during that meeting, no, Your

7  Honor.

8      THE COURT:  What is your position as to what the

9  principal should have done at that point?

10      MS. SBAITY:  The policies themselves for sexual

11  harassment require -- violating those professional boundaries

12  -- require and investigation to be done.  They are like later

13  on.  Keep going.

14      THE COURT:  So the policies if the principal

15  determines that the teacher is suspected of violating

16  student-teacher boundaries by either seeing the student at

17  inappropriate times or texting with the student, the policies

18  require the school to do something?

19      MS. SBAITY:  Yes, Your Honor.

20      THE COURT:  Require them to investigate?

21      MS. SBAITY:  Those violations would be some of the

22  kinds that have happened in this case up until this point.

23      THE COURT:  Do they require -- Let's assume the

24  principal investigates and determines that he has crossed

25  boundaries by having the student come to his classroom when

10:20:39AM 1    she should not, and that he is inappropriately texting with

2    the student; would not the response required by the policy be

3    that the teacher be admonished for that behavior and be

4    instructed to cease it?

5         MS. SBAITY:  It goes beyond that in the policy.  It

6    says shall subject the employee to discipline as provided by

7    the school board policy and/or state law up to and including

8    termination of employment.  He didn't receive any of that.

9         THE COURT:  So the admonishment to discontinue is

10    not a form of discipline.

11         MS. SBAITY:  No, Your Honor, because he had a track

12    record of not discontinuing inappropriate relationships.  They

13    knew about the text messages; that was prohibited under the

14    staff-student relations policy.  He should have been

15    disciplined from there, but he wasn't.  So the abuse continued

16    and so a slap on the hand wasn't going to do it.

17         THE COURT:  What is the Defendant's response to that

18    argument; that the principal did not follow school policy when

19    he simply that first occasion admonished Mr. Bouchard and told

20    him not to do it anymore?

21         MS. AVERBUCH:  Yes, Your Honor.  First of all,

22    policy violation is not per se deliberate indifference.  I

23    think that the evidence shows --

24         THE COURT:  Understanding that was there

25    nevertheless a policy violation should the principal not

10:22:22AM 1  follow the policy when he provided the admonishment as opposed

2  to some type of other policy-based discipline?

3           MS. AVERBUCH:  Yes, Your Honor.  Just to clarify --

4           THE COURT:  Yes, what, he did not follow policy?

5           MS. AVERBUCH:  I was actually going to ask you to

6  clarify your question about which incident it was.

7           THE COURT:  My question is on this occasion that Ms.

8  Sbaity was referring to when the principal got involved for

9  the first time I think after she was released from Veritas,

10  and found out that the student was spending time in his

11  classroom for unexplained reasons, and the principal went and

12  talked to Bouchard and admonished him and reminded him of the

13  boundaries that needed to be maintained between the students

14  and teachers; was his action at that time in doing that

15  insufficient as far as what the policy required?

16           MS. AVERBUCH:  Absolutely, it was insufficient and

17  the reason why is the context is very important here.  Jane

18  Doe was a student who had very severe mental health issues.

19  She had a severe eating disorder.  She had self-harm going on

20  and all of this was being addressed through a 504 plan where

21  there were multiple meetings with administrators, teachers;

22  Bouchard being one of them as a teacher providing classroom

23  services to her.  Bouchard was an integral part of that plan.

24  So there was nothing untoward.  First of all, to address the

25  previous question, none of the observations of Jane Doe in

10:24:18AM 1    Bouchard's classroom observed any inappropriate --

2            THE COURT:  I didn't mean to open this up to you to

3    provide all of your ammunition.  My question specifically was

4    and I think you said, yes, that the principal did violate the

5    policy.

6            MS. AVERBUCH:  No, Your Honor.

7            THE COURT:  The principal did not violate the

8    policy.

9            MS. AVERBUCH:  Correct.

10            THE COURT:  That's what I am trying to get at.

11            MS. AVERBUCH:  I apologize.  I think I misunderstood

12    your question.

13            THE COURT:  The reason you say the principal did not

14    violate the policy was because to determine whether he

15    violated the policy you have to look at the context of the

16    whole thing.

17            MS. AVERBUCH:  Correct.

18            THE COURT:  Based upon the context and the fact that

19    there was the plan that involved Bouchard that it was contrary

20    to policy for him to have done nothing more at this stage than

21    remind Bouchard of the boundaries that needed to be

22    maintained; is that correct?

23            MS. AVERBUCH:  Correct.

24            THE COURT:  So the policy did not require some

25    disciplinary action at that stage.

10:25:34AM 1          MS. AVERBUCH:  Correct.

2          THE COURT:  Now, tell me all those reasons you were

3    about to tell me as to why it did not require disciplinary

4    action at this stage.

5          MS. AVERBUCH:  Yes, Your Honor.  Several of our

6    witnesses testified that being an educator is -- you are

7    trying -- you are the person that's spending the most time

8    with the students.

9          THE COURT:  I'm interested in what the policy says.

10   Ms. Sbaity says there's clear school board policy that when a

11   principal learns of the activity that this principal learned

12   of on this occasion, which seems to be: one, that the student

13   was spending time in the classroom of Mr. Bouchard without a

14   reasonable explanation; that they were on notice of previous

15   texting between the two.  I think she said the evidence would

16   support a conclusion that the school knew he had texted with

17   other students perhaps breaking boundaries.

18          My understanding from what Ms. Sbaity says is that

19   she reads policy at that time to have required the principal

20   to have imposed some type of discipline, which he did not do.

21   That is part of her evidence of deliberate indifference, the

22   principal's failure to follow policy.  Now what I would like

23   to know is what the school board's interpretation of the

24   policy is and why it did not require discipline.  I understand

25   that simply violating the policy might not be evidence of

10:27:27AM 1    deliberate indifference but it could be relevant to that.

2    What is the applicable policy that should have guided the

3    principal at that moment; and why does the school district

4    contend he did not violate it?  I'm speaking of the discipline

5    policy.

6         MS. AVERBUCH:  Your Honor, I don't have the specific

7    policy in front of me.

8         THE COURT:  Well Ms. Sbaity, what do you understand

9    that policy said?  I'm sure you've got it on your PowerPoint.

10        MS. SBAITY:  Yes.  The prohibited conduct -- First

11   of all, employees are prohibited from taking the student off

12   the premises of any school.  And another thing is engaging in

13   prohibited personal relationships with the students.  And

14   above that that activity includes e-mails, social media, or

15   electronic communication.  So the violation of this policy

16   happened from the time that Jane Doe was at Veritas.  There

17   was no discipline the second slide.  The violation -- it shall

18   not may -- subject the employee to discipline as provided by

19   the school board policy under state law.

20        THE COURT:  What does that policy say though?

21   Discipline as provided by school board policy; what does that

22   policy say?  Surely it includes a gradation of increasing

23   severity with regard to discipline the first could be

24   admonishment.  Don't do it.  The next could be we're going to

25   put something in your file.  The next one may be you are

10:29:18AM 1    suspended for so many.  Whatever.  That's what I'm trying to

2    figure out.  Where is the policy here?

3              MS. SBAITY:  Yes, Your Honor.  I don't have the full

4    policy.

5              THE COURT:  Okay, nobody has the policy.

6              MS. SBAITY:  I have it in the binders and I can get

7    that.

8              THE COURT:  Tell me why you don't think it was

9    sufficiently important to have put it in the PowerPoint.

10              MS. SBAITY:  That's not the reason I left it out.  I

11    apologize, Your Honor.  It is sufficient.  In the end there

12    are reasonable inferences that the jury could find that the

13    principal was deliberately indifferent.

14              THE COURT:  What is your position as to what the law

15    requires with regard to what the school district was

16    deliberately indifferent to?  In other words, for the school

17    district to be liable do they have to have been deliberately

18    -- Can they be liable if they were just deliberately

19    indifferent to the fact that the employee was inappropriately

20    texting with the student?  If they are deliberately

21    indifferent to that, but they have no knowledge that there was

22    any sexual physical abuse; can they still be liable for the

23    employee's sexual physical abuse even if they had no notice of

24    that simply because they were deliberately indifferent to the

25    texting?  Doesn't there have to be a causal connection between

10:31:07AM 1   what they were deliberately indifferent to and the injury that

2   you contend she suffered?

3          MS. SBAITY:  Of course, Your Honor.

4          THE COURT:  Summarize for me how they were

5   deliberately indifferent.  Summarize for me when they learned

6   that there was a physically sexual relationship and what they

7   did or did not do in response to learning of that; that your

8   view constitutes deliberate indifference.

9          MS. SBAITY:  Yes, Your Honor.  The first place where

10  they would have potentially not -- This is a fact question

11  because we don't have the phone transcript.  We have testimony

12  from mom and we have testimony from the HR Director.  And it's

13  what was said during that call of what was the substance of

14  the text message.

15         THE COURT:  Okay, what was said that put them on

16  notice that there was a sexual relationship?

17         MS. SBAITY:  Not necessarily that there was a sexual

18  relationship, but if they had done their due diligence, the

19  school had done their due diligence in further investigating

20  his emails they would have seen that he then asked for --

21         THE COURT:  I understand that, but what put them on

22  notice?  Are you suggesting that the mere fact that a teacher

23  was texting with a student was sufficient to put them on

24  notice of a potential sexual relationship, which required them

25  to investigate further to see whether were, in fact, this was

10:32:59AM 1    more than texting?  Is that your argument?

2    MS. SBAITY:  Yes, Your Honor, it's the possibility

3    that they had knowledge of it.

4    THE COURT:  You believe the cases support imposition

5    of liability if a school district would have possibly known

6    that there was inappropriate sexual conduct?

7    MS. SBAITY:  Within the courts that have ruled that

8    way their analysis extends to prior conduct by that teacher.

9    THE COURT:  But is the standard, if possible?

10    Possible seems like speculation, which under the law is rarely

11    sufficient to impose a duty upon anyone.

12    MS. SBAITY:  I have the case cite.

13    THE COURT:  The possibility case; what is that case?

14    MS. SBAITY:  It's JFK v Troupe County District; it's

15    an Eleventh Circuit case.  It says:  All that is required for

16    actual notice is that it be sufficient to alert the decision

17    maker to the possibility of sexual harassment by the teacher.

18    THE COURT:  Do you agree with that interpretation of

19    that case that possibility is enough?

20    MS. AVERBUCH:  No, Your Honor, if you look at the

21    facts of JFK v Troupe County, in that case the student and the

22    teacher were observed under a blanket together.

23    THE COURT:  The possibility in that case is just

24    loose language; it doesn't mean what the judge said it does.

25    MS. AVERBUCH:  I would never want to put that on the

10:34:36AM 1    record.

2         THE COURT:  What do you think it means?

3         MS. AVERBUCH:  I think that the district must be on

4    notice of the possibility of -- I don't have an issue with

5    that word specifically, but it has git to be the possibility

6    of sexual relationship between this student and this teacher

7    and that is not present here.

8         THE COURT:  So you agree that possibility could be

9    enough?  Seems like there would need to be some reasonable

10   likelihood.

11        MS. AVERBUCH:  I think it is be more than a

12   possibility.  I will put myself out there and say I think the

13   use of the word possibility abstracts the issue and is not the

14   standard that the Court is actually applying in JFK.

15        THE COURT:  What do the cases say the standard is?

16        MS. AVERBUCH:  That there was actual notice that the

17   teacher was involved in a sexual relationship with that

18   student.  And that after receiving the actual notice, the

19   Defendant was deliberately indifferent to that sexual

20   misconduct between that specific student and that specific

21   teacher.

22        THE COURT:  It seems like if the JFK standard is

23   possibility, then if the school district knew that a teacher

24   was texting with a student unrelated to school work, then that

25   would be a possibility that there's an improper relationship

10:36:05AM 1    here.  That would impose upon the school district the duty to

2    investigate further and find that out, which seems to impose a

3    substantial burden on school district if the standard is just

4    possibility.

5        MS. AVERBUCH:  I agree Your Honor.

6        THE COURT:  But if it's reasonable likelihood or

7    something to that effect -- Okay, we'll dig into that case and

8    then we will come up with our understanding of what that

9    standard truly is.  Ms. Sbaity just candidly, as I understand

10    your argument, your position is that they knew about this

11    improper texting.

12        MS. SBAITY:  Yes, Your Honor.

13        THE COURT:  And they knew about her spending time in

14    his classroom unrelated to his classwork.  And that situation

15    should have put them on notice because they knew he had

16    inappropriately texted with other students.  That alone should

17    have put them on notice that, okay, there could be an improper

18    sexual relationship here or sexual abuse situation here.  And

19    therefor they should have investigated to find out whether

20    these were clues that that was happening.  And had they

21    investigated diligently, they would have discovered that there

22    was more to this than texting and her spending time in the

23    classroom.

24        MS. SBAITY:  Yes, Your Honor.

25        THE COURT:  And their failure to take the texting,

10:38:09AM 1    and the inappropriate classroom time, and his previous history

2    -- They failed to take that sufficiently seriously enough,

3    which in your view constitutes deliberate indifference.

4    Because they just didn't -- They knew about the texting, they

5    knew about the classroom time, they knew about his previous

6    crossing boundaries texting other students and they decided

7    deliberately at that point we are not going to investigate

8    further to see whether there is a sexual relationship.  And in

9    your view there's a factual dispute as to whether that was

10    deliberate indifference.

11            MS. SBAITY:  Yes, Your Honor.

12            THE COURT:  Dispute the Defendant's argument that

13    the school district needs to specifically be on notice of

14    sexual physical misconduct before they do anything.

15            MS. SBAITY:  As to that plaintiff.

16            THE COURT:  Yes.

17            MS. SBAITY:  Yes, Your Honor.  I want to add --

18            THE COURT:  That they have got a duty not only to

19    catch the person after they've engaged in the conduct, but

20    when they've got clues that it's on going they have got a duty

21    to prevent it.  And so rather than wait for someone to tell

22    them that he is doing this sexual misconduct, they've got to

23    examine what information they have as to what he was doing and

24    act reasonably in response to that or act without deliberate

25    indifference as to that.

10:40:11AM 1          MS. SBAITY:  Yes.

2          THE COURT:  What about that argument for the school

3     board?  That a jury should decide whether this inappropriate

4     texting and this inappropriate presence in his classroom, a

5     jury should decide whether that is a sign that more could be

6     going on such as a sexual relationship; that because educators

7     know of these well set boundaries and are trained not to cross

8     those boundaries.  One reason for those boundaries is to

9     prevent something like texting and unjustified presence in a

10    classroom.  One of the reasons for those boundaries is to

11    prevent that from evolving in to a sexual relationship and

12    therefor the school district failing to investigate further.

13    Why is there not a jury question as to whether that was

14    deliberate indifference?

15          Are there other cases that say that the standard is

16    that you have to know that there was an actual sexual

17    relationship going on and that you can ignore clues that there

18    may be a sexual relationship going on?

19          MS. AVERBUCH:  Yes.  Going back to the JFK case --

20          THE COURT:  What's the difference between, other

21    than amount of proof, what is the difference between the

22    school district being told this student is spending a lot of

23    time outside of class in this professor's classroom, this

24    teacher's classroom.  They are texting back and forth an

25    inordinate amount that it has to be related to something other

10:42:32AM 1    than the classroom.  I have seen the teacher and the student

2    outside of class in a car together.

3            What's the difference is that as far as that leading

4    a principal or an educator to reasonably suspect there's a

5    sexual relationship and getting a copy of a text message that

6    says that we had sexual relationships last evening?  The

7    latter is direct evidence of the school district knowing there

8    was a sexual relationship.  But it seems the former is

9    circumstantial evidence that there could be a sexual

10    relationship to which the school district can't be

11    deliberately indifferent.

12            MS. AVERBUCH:  Your Honor, I think the difference is

13    there is a line between conduct that may be inappropriate or

14    unprofessional and there's conduct that is sexual in nature.

15            THE COURT:  Sure.  Yelling at a student maybe in

16    front of the entire class and berating the student may be

17    inappropriate and cross a line, but the circumstances of that

18    would not reasonably lead to a conclusion that there is a

19    sexual relationship going on.  So that would not be evidence

20    to put the school district on notice.  Okay, I need to

21    investigate whether he is sexually abusing, but if you've got

22    evidence that there's all this texting, there's presence in

23    the classroom that he is even texting her when she's in the

24    hospital; why is that not circumstantial evidence that there

25    is an inappropriate relationship that even if it doesn't end

10:44:54AM 1    up in some sexual act shows a relationship where there is this

2    disproportionate power between the two that puts the student

3    at risk?  Why is that not --

4          MS. AVERBUCH:  I think the issue here, Your Honor,

5    is the Plaintiff would like to apply the constructive notice

6    standard, which is akin to this kind of circumstantial

7    evidence issue that you are talking about that applies in

8    negligence cases and that's simply not the standard.

9          THE COURT:  What's the difference between the

10    constructive notice standard and circumstantial?  We try jury

11    cases all the time where one of our standard charges to the

12    jury is describing to them the difference between direct and

13    circumstantial evidence.  And we tell the jury that there is

14    no difference in the weight that you can give evidence based

15    upon whether it's direct or circumstantial.  So why instead of

16    her making a constructive notice argument, why is her argument

17    not that this is circumstantial evidence that the Defendants

18    knew of the likelihood of a relationship that was

19    inappropriate including a sexual relationship; and therefor

20    once they knew if that they should have done more?

21          MS. AVERBUCH:  There's no evidence in the record

22    that anyone knew about the sexual relationship with between

23    them.

24          THE COURT:  I understand your argument I think, but

25    there is evidence of in the record that they knew that this

10:46:44AM 1    teacher was texting with this student beyond the classroom.

2    That he was texting with her to the extent that they were

3    concerned that he was blurring boundaries between teacher and

4    student; that they knew she was spending time in his classroom

5    for matters unrelated to his class.

6            MS. AVERBUCH:  But related to her 504 plan.

7            THE COURT:  Okay, that's one interpretation that the

8    jury could make.  And the others is that she's there an

9    inordinate amount of time crossing boundaries.  That he is

10   texting with her regularly while she's out in the hospital.

11   Why is that not circumstantial evidence that there is

12   something more to this than mere texting and concern for her

13   as her 504 plan intermediary; why is that not circumstantial

14   evidence?

15           MS. AVERBUCH:  Your Honor, I don't think you have to

16   answer that question because here with each instance that

17   Plaintiff alleges there's been no deliberate indifference on

18   the part of the school district.  And for those reasons

19   summary judgment should be granted regardless of what you find

20   about circumstantial evidence or constructive notice.

21           THE COURT:  Well, if you concluded that the

22   circumstantial evidence was enough to reasonably suspect a

23   sexual relationship, then why would simply going to him and

24   telling him to cool it with regard to the texting be

25   insufficient?  Why would their failure at that point not to

10:48:59AM 1    investigate further whether there was sexual conduct; why

2    wouldn't that be required?

3             MS. AVERBUCH:  When you're talking about the text

4    messages are you talking about the summer text messages at

5    Veritas?

6             THE COURT:  I'm talking about after Veritas when the

7    principal went to see Bouchard and said to him, gave him the

8    reminder of lets not cross boundaries.  I've called it an

9    admonishment.  Plaintiff claims there was no serious

10   discipline.  I am talking about at that meeting right there

11   when the principal knows what he knows up to that point, which

12   presumably includes the texting that could have crossed

13   boundaries.  Knew about the texting in the hospital because a

14   subordinate reported that at up the chain to some degree.

15   Knew about her spending time in his classroom unrelated to

16   class.  Felt the situation justified him sitting down with the

17   teacher and reminding him don't do this.  Don't cross the

18   line.  I'm talking about that point time.

19             Why wouldn't all the alarms go off and say as a

20   trained educator, wait a minute this just doesn't seem right.

21   We need to do more than just say Bouchard don't cross any

22   boundaries.  We need to do everything we can to see the extent

23   to which he is crossing boundaries.  I would think the bells

24   and whistles would go off for the principal at that point.

25   Her contention is that they likely did, but he didn't do

10:51:15AM 1    anything except tell him to stop, to not to cross boundaries.

2    Subsequent to that I'm assuming there's evidence that she was

3    continuing to be physically and sexually abused.

4            MS. SBAITY:  Yes, Your Honor.  In the text messages

5    themselves they describe the abuse; the extent of the physical

6    aspect of it.

7            THE COURT:  So if he had requested the teacher's

8    electronic device and retrieved the messages up to that point,

9    they would have discovered evidence of physical sexual abuse;

10   is that true?

11           MS. SBAITY:  His work device or his personal?

12           THE COURT:  Whichever.

13           MS. SBAITY:  Of course.  Under the work one --

14           THE COURT:  I understand teachers have got due

15   process rights themselves, but if they are alerted that he has

16   likely crossed boundaries, I don't know why they couldn't say

17   look we are going to suspend you.  But if you want to let us

18   see the messages to you know --

19           MS. AVERBUCH:  For the purposes of summary judgment

20   and under the deliberate indifferent standard the response is

21   not required to be perfect.  The Principal Urian did

22   discipline him within the context --

23           THE COURT:  How long was it after that meeting that

24   I've been referring, the meeting with the principal -- How

25   long was it between that meeting and him getting the

10:53:01AM 1    additional texts from the students that created the --

2              MS. AVERBUCH:  Less than two weeks.

3              THE COURT:  What did the school do during those two

4    weeks?

5              MS. AVERBUCH:  I want to add one more thing about

6    the meeting.

7              THE COURT:  What did the school do during those two

8    weeks?

9              MS. AVERBUCH:  Before the school received text

10   messages they did not do anything as far as I know.

11             THE COURT:  You contend that's deliberate

12   indifference.

13             MS. SBAITY:  Of course.  Under case law deliberate

14   indifference is an official decision by the recipient not to

15   remedy the violation.

16             THE COURT:  Your contention is that even earlier

17   they should have done more.  Clearly as of the date that the

18   principal sat down with him and was concerned enough to tell

19   him don't cross boundaries, certainly by that point they knew

20   enough to where they should have reasonably suspected there

21   was more here to investigate.

22             MS. SBAITY:  Of course.  The principal was one of

23   the individuals alerted of the text messages at Veritas.

24             THE COURT:  And your contention is him simply

25   admonishing the person who apparently he knew had been

10:54:21AM 1   admonished before with regard to texting other students, that

2   that alone creates a jury question as to deliberate

3   indifference.

4         MS. SBAITY:  Yes, Your Honor.

5         THE COURT:  Okay, that's their best argument.  I'll

6   let you respond to it.  We may come back to your PowerPoint,

7   but you could be seated at this point.

8         MS. SBAITY:  Thank you.

9         THE COURT:  Respond to that argument.

10         MS. AVERBUCH:  First of all, Plaintiff is not going

11   to be able to submit any non-hearsay evidence to the record at

12   trial that Bouchard was previously punished for texting

13   students.  There's currently no non-hearsay evidence in the

14   record supporting that statement; it is only from Plaintiff

15   and her mother who heard it third and forth hand.  Those

16   witnesses have not been produced and they will not be able to

17   be produced because some of them we don't even know their

18   names.  Second of all, I want to go back to her previous point

19   on that.

20         THE COURT:  It depends on the purpose for which that

21   evidence is being admitted.  If it's being admitted for the

22   purpose of notice it could be not hearsay if it's not being

23   admitted for the truth of the matter asserted.

24         MS. AVERBUCH:  If it's being offered for the fact

25   that the school knew about it and there is testimony and

10:55:44AM 1  evidence that the school did not know that there'd been

2  previous text messages, I don't how they get around that.

3          THE COURT:  What is your understanding of the

4  Plaintiffs?  You're talking about text messages with regard to

5  the other students.

6          MS. AVERBUCH:  Correct.

7          THE COURT:  Your understanding of the current

8  record, the evidence on that, is hearsay from who?

9          MS. AVERBUCH:  Plaintiff testified that she heard

10  from somebody else who told her that he had sent inappropriate

11  text messages to students; and that there had been a report

12  school leadership.  The testimony from the school leadership

13  is that there had never been a prior report about Bouchard

14  inappropriately texting students.  There is one email in the

15  record where.

16          THE COURT:  The only evidence you contend on that

17  point is Jane Doe testifying that somebody told her that

18  somebody else said.

19          MS. AVERBUCH:  Correct.

20          THE COURT:  Your position would be that if that's

21  being submitted for the truth of whether or not the school

22  district knew about that; that's double hearsay or whatever.

23          MS. AVERBUCH:  Yes, Your Honor.

24          THE COURT:  Let's take that out of the picture for a

25  moment; what they knew about another student.  Why is the fact

10:57:23AM 1    that after Veritas when its principal admonished Bouchard

2    because he was concerned about the potential of crossing lines

3    based upon his texting and the presence of the student in the

4    classroom; why is not one reasonable interpretation of that

5    evidence that he was on notice at the time based upon the

6    circumstances that there could likely be a sexual relationship

7    happening here; and he for the next two weeks did nothing?

8            Understanding that the other reasonable

9    interpretation of that could be Bouchard was involved in the

10    504 plan.  That explains why he had a professional

11    relationship with this student different than just teacher in

12    his class, and that the principal took that into

13    consideration; that would be one interpretation of the

14    evidence.  But why wouldn't the other be he still should have

15    known this was not -- particularly after learning of all the

16    texting in the hospital.

17            Why wouldn't that alert him particularly if the

18    student needs a 504 plan because of disability issues?  You

19    would be even more sensitive to making sure that the person

20    that is monitoring that plan and that is evolving from teacher

21    to counselor, it just seems like the antenna would just go up

22    even higher in that situation; which would affect whether what

23    he did was deliberately indifferent to all of the

24    circumstances or not.  What's the answer to that?

25            MS. AVERBUCH:  Your Honor, I think the

10:59:52AM 1   representation of the knowledge at the point of that meeting;

2   there's been a crucial piece that's been left out, which is

3   that a big part of the Principal Urian's concern was that

4   Bouchard was too extremely close to the family.  She was made

5   aware of the knowledge that Bouchard had driven not just Jane

6   Doe, but her mother and her brother.

7          THE COURT:  Why didn't they put them on more notice

8   that there is something going on here?

9          MS. AVERBUCH:  And she admonished him.

10         THE COURT:  Yeah.  But the question is whether or

11  not that would have put the principal on notice that we've got

12  more than just --

13         MS. AVERBUCH:  Well, most people don't like to have

14  sex in front of their mothers.  So I think that there was a

15  perception on the part of the principal that if this is an

16  entire family spending time with him, and the mother is

17  clearly on notice, that the mother is as the primary guardian

18  of the child is --

19         THE COURT:  The mother cannot authorize the school

20  district to be deliberately indifferent of the safety and the

21  wellbeing of the student.

22         MS. AVERBUCH:  And they were not.

23         THE COURT:  I don't understand this argument about

24  because the mother was, okay, with the situation that that

25  somehow absolves the school district.  Once the school

11:01:20AM 1   district takes these children into the school and puts them in

2   the position of being subjected to teachers, they are not off

3   the hook because the parent -- If the parent said, I don't

4   have a problem with my child having sex with their teacher;

5   that certainly wouldn't absolve the school district of

6   liability.

7        In fact, if the school district learned of the

8   family dynamics and the relationship that this teacher has

9   developed with the family; it would seem that somebody at the

10   principal and all the training that they receive in this area

11   would be alert to the possibility that this guy is grooming

12   the whole family so that he can abuse the child.

13        MS. AVERBUCH:  Importantly, Your Honor, even if

14   there are perceived omissions on the part of the school as it

15   appears you believe --

16        THE COURT:  No, I am just trying to pinpoint where

17   the strengths and weaknesses of your argument are.  I haven't

18   confirmed any personal belief or judicial belief on the facts;

19   that's the point of this argument is to find out where the

20   strengths and weaknesses of the argument are.  But you were

21   going to tell me why --

22        MS. AVERBUCH:  Regardless.

23        THE COURT:  You were going to tell me why even if I

24   concluded that the principal should have done more, that's not

25   enough for liability under Title IX.  Go ahead.

11:03:11AM 1          MS. AVERBUCH:  That's correct.  Because none of its

2   actions showed that the district made a conscious decision not

3   to remedy the violation.

4          THE COURT:  They made a conscious decision after his

5   admonishment there with the teacher.  They made a decision for

6   at least two weeks not to investigate further.

7          MS. AVERBUCH:  Investigate further.

8          THE COURT:  They made a conscious decision and they

9   likely would have not done anything even beyond the two weeks

10  had they not gotten the explicit letters from the student,

11  e-mails from the students two weeks later.  In other words

12  during that two-week period, if that's an accurate timeline,

13  they deliberately did nothing else because presumably the

14  principal thought the matter had been adequately handled with

15  his admonishment not to cross lines; is that correct?  During

16  that two weeks they deliberately chose to do nothing more.

17         MS. AVERBUCH:  I wouldn't agree with that.

18         THE COURT:  Why not?  If you don't agree with it

19  what did they do during that two weeks to follow up on the

20  admonishment?

21         MS. AVERBUCH:  I think that what I take issue with

22  is not so much the fact --

23         THE COURT:  Let's answer that question first.  What

24  did they do during that two weeks?

25         MS. AVERBUCH:  I'm not aware of any additional

11:04:59AM 1    action during that two weeks, but I do not think that in light

2    of the Eleventh Circuit case law on this issue that that

3    omission shows a deliberate decision not to remedy the

4    violation because as I think you've said, she believed the

5    situation to be remedied through her admonishment.  It doesn't

6    have to be perfect.  It doesn't have to check every box or

7    follow every policy; it just can't be deliberately

8    indifferent.

9            THE COURT:  That would assume that she did not

10    reasonably suspect that there was more to this than texting

11    and presence in the classroom.

12            MS. AVERBUCH:  Correct.

13            THE COURT:  How can I decide that as a matter of

14    law?  I understand how a jury could conclude that.  You're

15    asking me to decide as a matter of law that based upon what

16    she knew at that admonishment meeting no reasonable principal

17    would have concluded from what she knew that there was likely

18    something more to this that just texting.

19            MS. AVERBUCH:  The question was not what a

20    reasonable principal should have known under Title IX.  The

21    question is did she have actual notice and she did not have

22    actual notice at the point of the August 14th meeting that you

23    are referencing.

24            THE COURT:  Why could a jury not include -- based on

25    what she knew at that point -- Why could a jury not conclude

11:06:48AM 1    that she was aware of circumstances suggesting a sexual

2    relationship and yet knowing that she deliberately decided not

3    to investigate further whether that in fact occurred in order

4    to protect that?

5         MS. AVERBUCH:  It would not be appropriate for a

6    jury to decide that because there was no actual notice of

7    inappropriate conduct of a sexual nature.  There was only

8    notice of potentially inappropriate conduct.

9         THE COURT:  That's really the argument here.  The

10    argument is whether the texting that likely crossed

11    boundaries, whether the texting in the hospital, whether the

12    trips with the family, whether the visits to his classroom,

13    the real question is whether those circumstances -- that

14    circumstantial evidence -- is enough to put the school

15    district on notice of a sexual relationship; or whether as the

16    law says as a matter of law the school district had to have

17    direct evidence that they were engaged in a sexual

18    relationship.  That's really the issue isn't it?

19         MS. AVERBUCH:  Yes, Your Honor.

20         THE COURT:  What if they had all this same evidence,

21    the circumstantial evidence, plus a student went to the

22    principal and said: I saw him kiss her on the cheek as she was

23    in his classroom; would that be enough?  And the principal did

24    the same thing he did here, which is nothing for two weeks;

25    would that create a jury question?

11:09:07AM 1        MS. AVERBUCH:  I would argue no because that is not

2    evidence of conduct of a sexual nature.  Again, that is

3    inappropriate --

4        THE COURT:  What if a student comes in and says, I

5    saw them in there and he kissed her on the lips; would that

6    make it a jury question?

7        MS. AVERBUCH:  I don't think so because I think you

8    still move forward to --

9        THE COURT:  If the principal had all this

10   information about the texting, about the family, about the

11   hospital and a student comes in and says:  After class

12   Bouchard was kissing this student on the lips passionately at

13   his desk.  Then at that point the principal does not have to

14   investigate to see whether there is a sexual relationship?

15       MS. AVERBUCH:  Your Honor.

16       THE COURT:  Yes or no.  I mean not Bouchard, but the

17   principal.  That wouldn't create a jury question as to them

18   being deliberately indifferent if they did nothing for the

19   next two weeks.

20       MS. AVERBUCH:  No, Your Honor, because there was

21   action taken.  While it may not be perfect; while it may not

22   be what the Court wants or the Plaintiff wants --

23       THE COURT:  There is no action taken for two weeks.

24   The only reason there was action taken was because they got an

25   e-mail from student two weeks later.

11:10:43AM 1         MS. AVERBUCH:  I thought you said it was the same

2  facts where there was a meeting saying don't do that.

3         THE COURT:  Yes.  You think just telling him not to

4  do that would have been sufficient?

5         MS. AVERBUCH:  Yes.

6         THE COURT:  What if he unbuttoned her blouse, and

7  they were at the desk, and in addition to the kissing he was

8  fondling her; would him just saying don't do that be enough?

9         MS. AVERBUCH:  I think the case law is extremely

10  clear that on the deliberate indifference piece a Defendant

11  must show a decision not to remedy.

12         THE COURT:  I understand all the theory and the

13  precedent.  I'm asking you under those specific hypothetical

14  facts, you think there would still be summary judgment because

15  there's no deliberate indifference?

16         MS. AVERBUCH:  I think that would be a harder

17  question.

18         THE COURT:  So I don't have to go to the next

19  hypothetical.

20         MS. AVERBUCH:  No, please don't.

21         THE COURT:  You see the issue then.  It is really

22  whether I can decide it as a matter of law or whether there's

23  enough circumstances to where the jury has to decide.  And if

24  you look at it generally this is not a case where the school

25  district just stuck their head in the sand.  I will grant you

11:12:24AM 1    that.  They addressed each time something was presented to

2    them they did something.  The question I have is whether or

3    not that something is enough circumstantially to where a jury

4    could conclude that that something amounts to deliberate

5    difference.

6            Do you have case law in the sexual-harassment of

7    student context that sets out a hard-line that the school

8    district needs to know directly of the harassment; and not

9    just circumstances that would put them on notice of the

10    reasonable likelihood of harassment?  What's your best case on

11    that?

12            MS. AVERBUCH:  When you say directly do you mean

13    direct evidence?

14            THE COURT:  Yes.  That's really what this comes down

15    to.  I don't know what Ms. Sbaity's -- I think I know what her

16    position on it is -- but it's not really an argument of

17    constructive knowledge; what they should have known.  It's

18    whether the circumstantial evidence is sufficient for a jury

19    to find that there's a likelihood they did know and they

20    didn't do anything about it.

21            MS. AVERBUCH:  It's the possibility.

22            THE COURT:  It's not constructive notice; it's

23    circumstantial evidence.

24            MS. AVERBUCH:  Yes, Your Honor.  But that evidence

25    can't be so far afield.

11:14:20AM 1         THE COURT:  Well, think about it.  An adult teacher,

2    a young student, texting about matters unrelated to school,

3    inordinate amount of time in the classroom, personal texting

4    while in the hospital; developing some kind of outside the

5    school relationship with the family.  If your teachers or

6    principals went to the seminar on the risks of teacher-student

7    harassment; wouldn't the bells just go off if that evidence

8    was presented?

9         I would think if you presented at one of those

10   seminars and you just presented those facts, you would suggest

11   in that seminar that you should be alert that there could be

12   more to this than just the texting relationship.  It's just a

13   sign that there's more to it.  Now, if then investigated and

14   found no evidence of the relationship then okay; which is why

15   I think you've got a good argument that the first move to go

16   to the mom was probably reasonable.  And then when the mom,

17   their argument is that the mom was limited in some way here to

18   fully appreciate the situation; and that she has been taken

19   advantage of by Bouchard too.  But in any event, perhaps it

20   was reasonable after the mom said, oh no, we don't think

21   there's anything going on.

22         But I guess what bothers me to some extent is the

23   principal then going to him knowing all of that and just

24   saying don't do it.  I'm saying concerning as to whether

25   there's a jury question.  It was your motion by the Defendant

11:16:58AM 1  so I will give you a couple of minutes just to summarize and

2  say anything you wish to say that you don't think has been

3  covered.  And then Ms. Sbaity, I'll let you make a final short

4  rebuttal and then we will conclude.

5        If you think I've already covered it all then we

6  don't need to go over it again, but if there's something you

7  really wanted to say this morning, I want to make sure

8  everybody has the chance to be head.

9        MS. AVERBUCH:  Your Honor, I believe we've 'covered

10  the main issues for the Defendant.  I would respectfully

11  request a brief opportunity for rebuttal to the extent

12  necessary after the Plaintiff's presentation.

13        THE COURT:  Okay, well, I don't thing Ms. Sbaity's

14  presentation is going to be sufficiently long to require a

15  rebuttal, but Ms. Sbaity do you have anything you wish to say

16  further?

17        MS. SBAITY:  I did want to add as to the hearsay

18  argument there was documentation of a report -- Can I have the

19  screen backup?  It's just one page.

20        THE CLERK:  Yes, ma'am.

21        MS. SBAITY:  Thank you.  There was a report by a

22  parent about several inappropriate things said to his students

23  in talking about his roommates pornography addiction; that's

24  in reference to Bouchard.  And so aside from text messages

25  being of referenced here and there of being inappropriate in

11:18:24AM 1    the past, there's also this evidence; and we do know who this

2    is from.  So as for presentation of evidence at trial getting

3    around the hearsay argument this would be one instance.

4            THE COURT:  This was the --

5            MS. SBAITY:  Assuming it is hearsay of course.  This

6    is an excerpt.

7            THE COURT:  This is from who to who?

8            MS. SBAITY:  This is an excerpt of a larger e-mail

9    and it just didn't fit on the screen, but it was from a parent

10   to the school talking about the grade system and how grades

11   work.  And this was the last --

12           THE COURT:  Where was this in relation time-wise to

13   the time Ms. Doe was --

14           MS. SBAITY:  This is on February 8th, 2016, and

15   Jane Doe met Bouchard in August of 2016.

16           THE COURT:  Put that back up there.  And so is this

17   suggesting that Bouchard was talking to students about

18   Bouchard's roommate's pornography addiction or about -- Who is

19   he talking about?

20           MS. SBAITY:  He's talking about is own roommates,

21   Bouchard's roommate's pornography addiction.

22           THE COURT:  This parent is claiming that in the

23   class to students that Bouchard discussed Bouchard's

24   roommate's pornography addiction.

25           MS. SBAITY:  Yes, Your Honor, along with several

11:20:08AM 1   inappropriate things.

2         THE COURT:  So you contend this is notice to the

3   school district that is not offered for the truth of what is

4   stated, but that they were told and on notice that some parent

5   was contending that these things were said to the students by

6   Bouchard.

7         MS. SBAITY:  Yes, Your Honor, in addition to the

8   text messages.

9         THE COURT:  What text messages?

10         MS. SBAITY:  The notice of the prior inappropriate

11   text messages.  I am saying assuming those are hearsay this is

12   an additional piece of evidence of an inappropriate past.

13         THE COURT:  How old is this Bouchard?

14         MS. SBAITY:  Bouchard was at the time in the text --

15   At the time when they were discovered he said his age.  He's

16   27 and this was on August 27, 2017.  He said, I like it a

17   pinch to much.  I forget myself because at the end of the day

18   I am 27.

19         THE COURT:  And he -- Not that it matters or is

20   relevant, but Jane Doe was in what grade?

21         MS. SBAITY:  Jane Doe, it was her freshman year in

22   high school.

23         THE COURT:  Was she grade appropriate?  Was she in

24   the grade she was supposed to be in?

25         MS. SBAITY:  She started off that way.  She

11:21:46AM 1  eventually struggled to graduate high school.

2           THE COURT:  When she started ninth grade she was at

3  grade level.

4           MS. SBAITY:  Yes.  She was actually a thriving

5  student and excelled in class up until the abuse.

6           THE COURT:  And Bouchard obviously got fired

7  eventually.

8           MS. SBAITY:  He was not fired.  He was allowed to

9  resign voluntarily.

10          THE COURT:  Was he prosecuted?

11          MS. SBAITY:  He was not prosecuted.

12          THE COURT:  There was no legal action against him

13  because you just don't think he's got any money.

14          MS. SBAITY:  That is for outside discussion; that's

15  part of the legal strategy, yes.

16          THE COURT:  There is no legal action against him.

17          MS. SBAITY:  No legal action pending at the moment,

18  no.

19          THE COURT:  Do these school districts provide

20  liability insurances teachers?  I am assuming not.  There

21  would be no insurance carrier that would cover intentional

22  criminal acts.

23          MS. AVERBUCH:  I don't know that for certain, but I

24  think your line of reasoning is probably on point.

25          THE COURT:  Anything else you wanted to rebut with

11:23:08AM 1    regard to what Ms. Sbaity just said?

2                MS. SBAITY:  Can I say one more thing?

3                THE COURT:  Yes.

4                MS. SBAITY:  We do believe Mr. Bouchard is covered

5    under their policy.  There's a little bit of a dispute as to

6    whether he is under the school district's insurance policy.

7                THE COURT:  And there perhaps is a dispute as to

8    whether intentional criminal acts are excluded.

9                MS. SBAITY:  Whether he is covered, yes.

10               THE COURT:  There's no declaratory judgment action

11   pending on any of that.

12               MS. SBAITY:  No, Your Honor.

13               THE COURT:  All right, anything like that you'd like

14   to add for the school district?

15               MS. AVERBUCH:  No, Your Honor.

16               THE COURT:  Depending on the Court's ruling, if

17   summary judgment were denied is this case otherwise ready to

18   go to trial?

19               MS. AVERBUCH:  Yes, Your Honor.

20               MS. SBAITY:  Yes, Your Honor.

21               THE COURT:  My intention is usually when I've set a

22   case for oral argument I've given it some thought before I

23   came in, but I am going to issue a written order and hopefully

24   we will have that out within a week or so.  If I deny summary

25   judgment, we will pre-try this case.  When are our pretrials

11:24:45AM 1  for our May term?  Just so you can tentatively put it on your

2  schedule.  Obviously, if I grant summary judgment you can take

3  it off your schedule and hopefully you'll know that by next

4  Friday at the latest.

5          THE CLERK:  April the 11th and 12th.

6          THE COURT:  The pretrial conference in this case

7  would be April 11th or 12th.  When are the others?  When do

8  we have them down the 11th?  Did we set anything yet?

9          THE CLERK:  No, sir.

10         THE COURT:  We're going to be setting down the

11  pretrials for our May Athens term in the next couple of days

12  also, but the two pretrial conference dates were May 11th and

13  12th so if you can tentatively --

14         MS. SBAITY:  Your Honor, did you say May or April?

15         THE COURT:  I said May but I was wrong, April 11th

16  and 12th are the dates when we will pre-try this case if I

17  deny summary judgment.  And then we've got a two-week jury

18  trial term scheduled to begin May; what date is that?

19         THE CLERK:  The 13th of May, Your Honor.

20         THE COURT:  Starting the 13th of May so the week

21  of 13th of May and the week of May 20th is our May trial

22  term, which is when we could try this case depending on

23  summary judgment.  One of those weeks there is another case

24  that has been specially set for May 13th if that case goes

25  to trial, which it like that is.  The we likely would not

11:26:37AM 1    reach this case until the 20th.  We've also got some other

2    cases depending on their age I don't know if this case will go

3    in front of it or not.  If we can't reach in those two weeks

4    we may not reach it until -- Well, we won't reach it in May if

5    we don't get it tried during those two weeks.  So just for

6    your scheduling purposes tentatively that's when we would try

7    the case hopefully one of those two weeks.  But we should get

8    a written summary judgment order out by next Friday so you'll

9    know for sure at that point in time.

10          Okay, this has been helpful.  Thank you for coming.

11    Have a good weekend.

12          COURT SECURITY OFFICER:  All rise.

13

14

15          (Proceedings concluded.)

16          END OF RECORD

17

18

19

20

21

22

23

24

25

11:27:27AM 1          CERTIFICATE OF OFFICIAL REPORTER

2

3                I, Joan Drammeh, Federal Official Court

4    Reporter, in and for the United States District Court for the

5    Middle District of Georgia, do hereby certify that pursuant to

6    Section 753, Title 28, United States Code, that the foregoing

7    is a true and correct transcript of the stenographically

8    reported proceedings held in the above-entitled matter and

9    that the transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12

13   Dated this 29th day of MAY, 2024

14

15

16   ___Joan Drammeh_____

17

18   JOAN DRAMMEH, CVR, CCR

19   FEDERAL OFFICIAL COURT REPORTER

20

21       MY COMMISSION EXPIRES:
         APRIL 1, 2025

22

23

24

25



COURT SECURITY OFFICER: [2]  3/3 59/12
MR. BRITT: [1]  4/16
MR. HADEN: [2]  4/9 4/12
MS. AVERBUCH: [70]
MS. SBAITY: [115]
THE CLERK: [7]  3/25 4/3 6/25 53/20 58/5 58/9 58/19
THE COURT: [188]

**'**
'covered [1]  53/9

**0**
01 [2]  1/5 3/2
09:46:54 [1]  3/2

**1**
100 [1]  1/16
11th [5]  58/5 58/7 58/8 58/12 58/15
12th [4]  58/5 58/7 58/13 58/16
13th if [1]  58/24
13th of [3]  58/19 58/20 58/21
14th [2]  12/23 47/22
15 [1]  9/5
191 [1]  1/23

**2**
2016 [3]  13/4 54/14 54/15
2017 [3]  9/3 12/23 55/16
2024 [3]  1/5 3/2 60/13
20th [2]  58/21 59/1
27 [3]  55/16 55/16 55/18
28 [1]  60/6
2900 [1]  1/23
29th [1]  60/13

**3**
30303 [1]  1/24
30327 [1]  1/17
37 [1]  18/9
3:22-CV-00047-CDL [2]  1/4 4/4

**4**
404-954-5003 [1]  1/25
404-961-7655 [1]  1/18
4200 [1]  1/14

**5**
5003 [1]  1/25
504 [5]  24/20 37/6 37/13 43/10 43/18

**7**
753 [1]  60/6
7655 [1]  1/18

**8**
8th [1]  54/14

**9**
90 [2]  9/3 9/3

**A**
aaverbuch [1]  2/1
abide [1]  20/24
able [2]  41/11 41/16
about [61]
above [2]  27/14 60/8
above-entitled [1]  60/8

absence [2]  9/8 11/21
absent [7]  9/3 9/9 9/11 10/6 10/8 10/11 10/12
Absolutely [1]  24/16
absolve [1]  45/5
absolves [1]  44/25
abstracts [1]  31/13
abuse [12]  9/2 12/21 17/4 17/15 23/15 28/22 28/23 32/18 39/5 39/9 45/12 56/5
abused [2]  19/15 39/3
abusing [1]  35/21
accurate [1]  46/12
act [3]  33/24 33/24 36/1
acted [2]  7/4 7/13
acting [1]  12/4
action [12]  7/12 24/14 25/25 26/4 47/1 49/21 49/23 49/24 56/12 56/16 56/17 57/10
actions [3]  7/13 9/16 46/2
activity [2]  26/11 27/14
acts [2]  56/22 57/8
actual [9]  8/9 14/18 30/16 31/16 31/18 34/16 47/21 47/22 48/6
actually [6]  20/13 21/4 21/16 24/5 31/14 56/4
add [4]  33/17 40/5 53/17 57/14
addiction [4]  53/23 54/18 54/21 54/24
addition [2]  50/7 55/7
additional [3]  40/1 46/25 55/12
address [4]  7/5 8/7 17/25 24/24
adequately [1]  46/14
adjust [1]  6/6
administrators [1]  24/21
admitted [3]  41/21 41/21 41/23
admonished [6]  23/3 23/19 24/12 41/1 43/1 44/9
admonishing [1]  40/25
admonishment [9]  23/9 24/1 27/24 38/9 46/5 46/15 46/20 47/5 47/16
adult [1]  52/1
advantage [3]  19/12 19/12 52/19
advocate [1]  6/3
affect [1]  43/22
afield [1]  51/25
after [17]  16/18 16/23 17/10 18/3 21/10 22/2 24/9 31/18 33/19 38/6 39/23 43/1 43/15 46/4 49/11 52/20 53/12
afternoon [1]  3/9
again [2]  49/2 53/6
against [2]  56/12 56/16
age [2]  55/15 59/2
agencies [1]  5/14
agree [6]  15/7 30/18 31/8 32/5 46/17 46/18
ahead [3]  8/11 12/12 45/25
akin [1]  36/6
alarms [1]  38/19
alert [4]  30/16 43/17 45/11 52/11
alerted [5]  6/9 13/23 14/8 39/15 40/23
alerting [1]  16/21
all [29]  3/3 3/8 4/5 4/6 5/3 6/7 16/3 23/21 24/20 24/24 25/3 26/2 27/11 30/15 35/22 36/11 38/19 41/10 41/18 43/15 43/23 45/10 48/20 49/9 50/12 52/23 53/5 57/13 59/12
allegations [2]  18/21 18/22
allege [1]  12/18
alleges [1]  37/17

alleging [1]  7/12
ALLISON [2]  1/24 1/14
allowed [2]  19/17 56/8
alone [8]  9/1 17/2 20/9 21/5 21/8 21/14 32/16 41/2
along [2]  21/8 54/25
already [1]  53/5
also [6]  3/25 10/7 20/25 54/1 58/12 59/1
although [2]  5/2 9/22
always [2]  3/14 16/19
am [13]  4/2 4/13 6/8 6/9 6/19 6/21 25/10 38/10 45/16 55/11 55/18 56/20 57/23
America [1]  3/17
ammunition [1]  25/3
amount [4]  34/21 34/25 37/9 52/3
amounts [1]  51/4
analysis [4]  7/7 7/9 12/10 30/8
another [8]  4/21 8/15 11/5 19/20 21/3 27/12 42/25 58/23
answer [4]  10/15 37/16 43/24 46/23
antenna [1]  43/21
any [17]  7/19 13/11 14/13 14/17 19/14 20/18 23/8 25/1 27/12 28/22 38/21 41/11 45/18 46/25 52/19 56/13 57/11
anymore [2]  17/22 23/20
anyone [2]  30/11 36/22
anything [13]  10/11 10/17 33/14 39/1 40/10 46/9 51/20 52/21 53/2 53/15 56/25 57/13 58/8
apologize [2]  25/11 28/11
apparently [1]  40/25
appear [1]  16/19
APPEARANCES [1]  1/11
appears [1]  45/15
applicable [1]  27/2
applies [1]  36/7
apply [1]  36/5
applying [1]  31/14
appreciate [1]  52/18
approach [1]  6/14
appropriate [15]  7/5 7/6 7/15 7/20 7/25 8/1 8/7 8/15 9/16 15/8 15/10 15/15 15/16 48/5 55/23
appropriately [1]  7/4
April [4]  58/5 58/7 58/14 58/15
are [41]  4/1 4/6 4/22 6/5 7/2 7/12 7/15 7/20 7/24 8/2 8/7 9/15 9/21 12/20 16/19 22/12 26/6 26/7 27/11 27/25 28/12 28/20 29/22 33/7 34/7 34/15 34/24 36/7 38/4 39/15 39/17 45/2 45/14 45/17 45/20 47/23 55/11 57/8 57/25 58/7 58/16
area [1]  45/10
argue [1]  49/1
argument [26]  4/18 4/18 4/23 5/1 23/18 30/1 32/10 33/12 34/2 36/16 36/16 36/24 41/5 41/9 44/23 45/17 45/19 45/20 48/9 48/10 51/16 52/15 52/17 53/18 54/3 57/22
around [2]  42/2 54/3
as [65]
aside [1]  53/24
ask [1]  24/5
asked [1]  29/20
asking [3]  15/18 47/15 50/13
aspect [1]  39/6
asserted [1]  41/23
assume [2]  22/23 47/9

**A**

assuming [5]  9/15 39/2 54/5 55/11 56/20
at [59]  3/10 5/21 8/5 9/4 12/6 12/25 12/25 13/8 13/20 14/21 15/3 15/7 16/24 17/23 18/1 20/19 22/9 22/16 24/14 25/10 25/15 25/20 25/25 26/4 26/19 27/3 27/16 30/20 33/7 35/15 36/3 37/25 38/4 38/10 38/14 38/24 40/23 41/7 41/11 43/5 44/1 45/9 46/6 47/16 47/22 47/25 49/12 49/13 50/7 50/24 52/9 54/2 55/14 55/15 55/17 56/2 56/17 58/4 59/9
ATHENS [3]  1/2 1/6 58/11
ATLANTA [3]  1/17 1/24 3/8
attendance [2]  10/8 10/10
attending [1]  11/16
audits [1]  9/22
August [3]  44/2 54/15 55/18
authority [2]  7/11 15/13
authorize [1]  44/19
AVERBUCH [2]  1/22 4/15
aware [5]  5/15 14/15 18/12 44/5 46/25 48/1
awareness [1]  18/23
away [1]  10/3

**B**

back [8]  17/8 20/6 21/11 34/19 34/24 41/6 41/18 54/16
backing [1]  19/23
backup [1]  53/19
based [10]  5/13 6/5 8/14 24/2 25/18 36/14 43/3 43/5 47/15 47/24
be [93]
beat [1]  3/8
because [34]  5/3 7/7 8/9 11/10 14/2 14/4 14/7 20/6 20/7 23/11 25/14 28/24 29/11 32/15 33/4 34/6 37/16 38/13 41/17 43/2 43/18 44/24 45/3 46/1 46/13 47/4 48/6 49/1 49/7 49/20 49/24 50/14 55/17 56/13
been [20]  3/11 3/18 16/8 23/14 28/17 37/17 39/24 40/25 41/16 42/1 42/11 42/13 44/2 44/2 46/14 50/4 52/18 53/2 58/24 59/10
before [6]  1/9 18/16 33/14 40/9 41/1 57/22
begin [1]  58/18
beginning [2]  12/6 17/19
behavior [3]  14/9 16/22 23/3
being [19]  4/13 6/7 10/22 10/24 11/18 19/24 24/20 24/22 26/6 34/22 41/21 41/21 41/22 41/24 42/21 45/2 49/18 53/25 53/25
belief [2]  45/18 45/18
believe [5]  10/14 30/4 45/15 53/9 57/4
believed [1]  47/4
bells [2]  38/23 52/7
below [1]  16/18
berating [1]  35/16
best [3]  6/3 41/5 51/10
between [23]  8/24 13/18 13/24 14/3 15/1 15/5 15/12 18/12 21/25 24/13 26/15 28/25 31/6 31/20 34/20 34/21 35/13 36/2 36/9 36/12 36/22 37/3 39/25
beyond [3]  23/5 37/1 46/9
big [1]  44/3
binders [1]  28/6

bit [1]  57/5
blanket [1]  30/22
BLDG [1]  1/15
blouse [1]  50/6
blurring [1]  37/3
board [6]  8/13 23/7 26/10 27/19 27/21 34/3
board's [1]  26/23
both [1]  19/12
bothers [1]  52/22
Bouchard [41]  9/14 11/17 16/22 17/3 19/24 20/12 20/13 20/22 20/23 20/25 21/4 21/17 21/24 22/3 23/19 24/12 24/22 24/23 25/19 25/21 36/14 38/2 38/21 41/12 42/13 43/1 43/9 44/4 44/5 49/12 49/16 52/19 53/24 54/5 54/17 54/23 55/6 55/13 55/14 56/6 57/4
Bouchard's [9]  9/9 10/3 10/21 11/13 21/15 25/1 54/18 54/21 54/23
boundaries [28]  9/14 19/23 20/23 21/17 21/18 21/19 21/25 22/11 22/16 22/25 24/13 25/21 26/17 33/6 34/7 34/8 34/8 34/10 37/3 37/9 38/8 38/13 38/22 38/23 39/1 39/16 40/19 48/11
box [1]  47/6
breaking [1]  26/17
brief [1]  53/11
briefing [1]  5/4
Britt [1]  4/16
brother [1]  44/6
bump [1]  15/12
bumped [4]  14/22 15/4 15/21 18/25
burden [1]  32/3
business [1]  17/22
but [63]

**C**

call [5]  4/2 16/17 18/21 19/5 29/13
called [2]  13/22 38/8
calling [1]  14/7
came [2]  17/8 57/23
can [20]  5/6 5/14 5/24 6/1 12/13 12/14 28/6 28/18 28/22 34/17 36/14 38/22 45/12 47/13 50/22 53/18 57/2 58/1 58/2 58/13
can't [5]  5/13 35/10 47/7 51/25 59/3
candidly [1]  32/9
cannot [1]  44/19
car [1]  35/2
carrier [1]  56/21
case [33]  4/2 4/3 4/22 7/3 8/14 11/25 22/22 30/12 30/13 30/13 30/15 30/19 30/21 30/23 32/7 34/19 40/13 47/2 50/9 50/24 51/6 51/10 57/17 57/22 57/25 58/6 58/16 58/22 58/23 58/24 59/1 59/2 59/7
cases [6]  30/4 31/15 34/15 36/8 36/11 59/2
catch [1]  33/19
causal [1]  28/25
cautioned [1]  16/19
CCR [2]  2/6 60/18
CDL [2]  1/4 4/4
cease [2]  21/24 23/4
Central [3]  8/2 8/6 8/20
certain [1]  56/23
certainly [3]  15/6 40/19 45/5
CERTIFICATE [1]  59/17
certify [1]  60/5
chain [1]  38/11

challenge [1]  5/18
chance [1]  53/8
charges [1]  36/11
check [1]  47/6
checking [1]  14/20
cheek [1]  48/22
child [4]  19/13 44/18 45/4 45/12
children [1]  45/1
chose [1]  46/16
Circuit [3]  8/14 30/15 47/2
circumstances [7]  35/17 43/6 43/24 48/1 48/13 50/23 51/9
circumstantial [15]  35/9 35/24 36/6 36/10 36/13 36/15 36/17 37/11 37/13 37/20 37/22 48/14 48/21 51/18 51/23
circumstantially [1]  51/3
cite [1]  30/12
City [1]  8/13
claim [1]  12/11
claiming [1]  54/22
claims [1]  38/9
clarify [2]  24/3 24/6
CLARKE [5]  1/6 4/4 8/2 8/6 8/20
class [16]  9/6 10/6 10/7 10/11 10/12 20/9 21/21 34/23 35/2 35/16 37/5 38/16 43/12 49/11 54/23 56/5
classes [4]  9/5 10/3 10/13 11/17
classroom [40]  9/2 9/9 10/4 10/16 10/21 10/23 10/23 10/24 11/6 11/13 11/17 20/9 20/12 21/5 21/15 21/16 21/21 22/25 24/11 24/22 25/1 26/13 32/14 32/23 33/1 33/5 34/4 34/10 34/23 34/24 35/1 35/23 37/1 37/4 38/15 43/4 47/11 48/12 48/23 52/3
classrooms [2]  11/1 11/9
classwork [1]  32/14
CLAY [1]  1/9
clear [4]  5/5 12/13 26/10 50/10
clearly [3]  16/4 40/17 44/17
click [1]  6/23
close [1]  44/4
clues [3]  32/20 33/20 34/17
Code [1]  60/6
colleagues [1]  3/10
colonial [1]  3/17
come [3]  22/25 32/8 41/6
comes [6]  8/20 11/2 20/10 49/4 49/11 51/14
coming [1]  59/10
communicated [2]  13/3 13/8
communication [6]  13/17 14/3 14/13 18/7 19/18 27/15
comply [1]  22/5
concern [9]  13/24 14/2 14/2 14/4 14/20 15/1 15/5 37/12 44/3
concerned [7]  16/25 18/17 18/22 21/2 37/3 40/18 43/2
concerning [2]  15/14 52/24
concerns [2]  17/11 19/9
conclude [4]  47/14 47/25 51/4 53/4
concluded [4]  37/21 45/24 47/17 59/15
conclusion [3]  5/9 26/16 35/18
conduct [12]  5/11 5/16 27/10 30/6 30/8 33/19 35/13 35/14 38/1 48/7 48/8 49/2
conducted [1]  9/22
conference [4]  1/9 58/6 58/12 60/10
confirmed [1]  45/18
conformance [1]  60/9
confronted [1]  20/13
confused [1]  12/9

## C

connection [2]  20/1 28/25
conscious [3]  46/2 46/4 46/8
consider [2]  16/11 16/14
consideration [1]  43/13
constitutes [2]  29/8 33/3
constructive [6]  36/5 36/10 36/16 37/20 51/17 51/22
contact [4]  8/24 17/4 19/17 20/6
contacted [1]  19/3
contend [9]  5/8 7/24 8/1 16/10 27/4 29/2 40/11 42/16 55/2
contending [1]  55/5
contention [4]  17/14 38/25 40/16 40/24
context [5]  24/17 25/15 25/18 39/22 51/7
continued [6]  17/4 17/4 17/15 18/4 18/7 23/15
continuing [1]  39/3
contrary [1]  25/19
contribute [1]  9/16
conversation [1]  20/13
cool [1]  37/24
copies [1]  6/16
copy [1]  35/5
correct [16]  11/9 15/22 16/5 16/6 16/8 25/9 25/17 25/22 25/23 26/1 42/6 42/19 46/1 46/15 47/12 60/7
corrective [2]  7/11 7/13
correspondence [1]  9/7
could [28]  5/19 11/23 12/20 13/14 14/19 15/1 15/14 18/24 27/1 27/23 27/24 28/12 31/8 32/17 34/5 35/9 37/8 38/12 41/7 41/22 43/6 43/9 47/14 47/24 47/25 51/4 52/11 58/22
couldn't [1]  39/16
counsel [1]  6/17
counselor [1]  43/21
COUNTY [4]  1/6 4/4 30/14 30/21
couple [3]  5/5 53/1 58/11
course [7]  11/10 17/5 29/3 39/13 40/13 40/22 54/5
COURT [14]  1/1 3/4 3/19 3/22 5/19 5/22 8/8 12/2 12/7 31/14 49/22 60/3 60/4 60/19
Court's [1]  57/16
courts [1]  30/7
cover [1]  56/21
covered [4]  53/3 53/5 57/4 57/9
create [4]  5/19 15/1 48/25 49/17
created [1]  40/1
creates [1]  41/2
criminal [2]  56/22 57/8
cross [9]  21/19 34/7 35/17 38/8 38/17 38/21 39/1 40/19 46/15
crossed [4]  22/24 38/12 39/16 48/10
crossing [4]  33/6 37/9 38/23 43/2
crucial [2]  7/8 44/2
current [1]  42/7
currently [1]  41/13
cut [1]  19/18
cutoff [1]  20/1
CV [2]  1/4 4/4
CVR [2]  2/6 60/18

## D

dad's [1]  19/13
Daleville [1]  8/13
date [2]  40/17 58/18
Dated [1]  60/13

dates [2]  58/12 58/16
daughter [1]  18/13
day [2]  55/17 60/13
days [2]  3/15 58/11
decide [8]  5/5 34/3 34/5 47/13 47/15 48/6 50/22 50/23
decided [3]  15/22 33/6 48/2
decision [9]  16/12 30/16 40/14 46/2 46/4 46/5 46/8 47/3 50/11
declaratory [1]  57/10
declaring [1]  3/16
DEFENDANT [11]  1/6 1/21 4/15 7/8 7/19 7/24 8/17 31/19 50/10 52/25 53/10
Defendant's [3]  5/2 23/17 33/12
Defendants [1]  36/17
defiant [1]  20/24
degree [1]  38/14
deliberate [25]  5/20 5/23 6/20 9/17 12/17 13/15 15/6 16/5 23/22 26/21 27/1 29/8 33/3 33/10 33/24 34/14 37/17 39/20 40/11 40/13 41/2 47/3 50/10 50/15 51/4
deliberately [26]  5/10 5/16 6/22 7/4 7/13 12/5 12/8 12/9 28/13 28/16 28/17 28/18 28/20 28/24 29/1 29/5 31/19 33/7 35/11 43/23 44/20 46/16 46/16 47/7 48/2 49/18
Demon [1]  8/5
demons [1]  21/1
denied [2]  57/14 58/17
deny [2]  57/24 58/17
depending [3]  57/16 58/22 59/2
depends [1]  11/7 41/20
deposition [4]  14/5 16/21 18/16 21/4
describe [1]  36/12
describing [1]  36/12
desk [2]  49/13 50/7
determine [1]  25/14
determines [2]  22/15 22/24
determining [1]  7/9
developed [2]  3/23 45/9
developing [1]  52/4
device [2]  39/8 39/11
did [54]  3/16 3/20 3/25 7/12 8/23 9/10 9/16 9/24 11/12 11/19 12/16 13/19 14/2 15/3 16/25 16/25 17/6 17/18 19/16 22/4 23/18 24/4 25/4 25/7 25/13 25/24 26/3 26/20 26/24 27/4 29/7 29/7 38/25 39/21 40/3 40/7 40/10 42/1 43/7 43/23 46/13 46/19 46/24 47/9 47/21 47/21 48/23 48/24 49/18 51/2 51/19 53/17 58/8 58/14
didn't [14]  3/22 11/22 17/2 17/11 18/23 19/8 21/2 23/8 25/2 33/4 38/25 44/7 51/20 54/9
differed [1]  46/25
difference [8]  34/20 34/21 35/3 35/12 36/9 36/12 36/14 51/5
different [1]  43/11
dig [1]  32/7
diligence [2]  29/18 29/19
diligently [1]  32/21
direct [5]  35/7 36/12 36/15 48/17 51/13
directive [1]  22/5
directly [1]  51/8 51/12
Director [2]  8/3 29/12
disabilities [2]  19/11 19/13
disability [1]  43/18
disagree [8]  8/12 15/9

disagreement [1]  7/19
disciplinary [2]  25/25 26/3
discipline [12]  23/6 23/10 24/2 26/20 26/24 27/4 27/17 27/18 27/21 27/23 38/10 39/22
disciplined [1]  23/15
discontinue [1]  23/9
discontinuing [1]  23/12
discovered [3]  32/21 39/9 55/15
discussed [1]  54/23
discussion [3]  6/21 16/23 56/14
disorder [1]  24/19
displayed [1]  12/20
disproportionate [1]  36/2
dispute [9]  5/20 7/22 8/5 8/18 8/22 33/9 33/12 57/5 57/7
distract [1]  6/4
district [47]  1/1 1/1 1/6 1/10 3/4 3/4 4/4 5/9 6/22 8/4 9/22 16/11 17/1 17/6 17/11 18/4 27/3 28/15 28/17 30/5 30/14 31/3 31/23 32/1 32/3 33/13 34/12 34/22 35/7 35/10 35/20 37/18 42/22 44/20 44/25 45/1 45/5 45/7 46/2 48/15 48/16 50/25 51/8 55/3 57/14 60/4 60/5
district's [2]  5/12 57/6
districts [1]  56/19
dive [1]  5/3
DIVISION [1]  1/2
do [52]  4/18 6/8 6/23 6/23 6/25 7/1 9/10 9/25 12/16 15/18 15/24 16/10 17/1 18/24 19/19 22/18 22/23 23/16 23/20 26/20 27/8 27/24 28/17 29/7 30/18 31/2 31/15 33/14 38/17 38/21 38/22 38/25 40/3 40/7 40/10 46/16 46/19 46/24 47/1 50/2 50/4 50/8 51/6 51/12 51/20 52/24 53/15 54/1 56/19 57/4 58/7 60/5
documentation [1]  53/18
DOE [24]  1/4 4/4 8/24 9/1 9/8 10/2 10/16 11/16 12/25 15/1 15/12 17/11 17/15 17/25 21/3 24/18 24/25 27/16 42/17 44/6 54/13 54/25 55/20 55/21
Doe's [5]  14/5 14/8 16/18 16/20 20/25
does [9]  7/24 10/13 11/4 21/9 27/3 27/20 27/21 30/24 49/13
doesn't [8]  8/8 8/17 28/25 30/24 35/25 38/20 47/5 47/6
doing [5]  10/10 16/2 24/14 33/22 33/23
don't [38]  3/11 15/10 15/14 15/16 16/13 27/6 27/24 28/3 28/8 29/11 31/4 37/15 38/17 38/17 38/21 39/16 40/19 41/17 42/2 44/13 44/23 45/3 46/18 49/7 50/2 50/8 50/18 50/20 51/15 52/20 52/24 53/2 53/6 53/13 56/13 56/23 59/2 59/5
done [10]  11/14 22/9 22/12 25/20 29/18 29/19 36/20 40/17 45/24 46/9
double [1]  42/22
down [6]  21/24 38/16 40/18 51/14 58/8 58/10
DRAMMEH [4]  2/6 2/7 60/3 60/18
driven [1]  44/5
due [3]  18/9 29/19 39/14
Duke [3]  8/4 8/19 18/20
Duke's [1]  18/16
during [14]  18/11 19/21 21/21 22/3 22/6 29/13 40/3 40/7 46/12 46/15 46/19 46/24 47/1 59/5
duty [2]  10/22 10/23 11/6 11/7 30/11

**D**

duty... [3]  32/1 33/18 33/20
dynamics [1]  45/8

**E**

e-mail [10]  9/7 17/19 17/20 17/23
17/23 17/24 17/25 18/7 49/25 54/8
e-mails [2]  27/14 46/11
each [3]  12/7 37/16 51/1
earlier [1]  40/16
early [1]  3/15
eating [1]  24/19
Education [1]  8/13
educator [3]  26/6 35/4 38/20
educators [1]  34/6
effect [1]  32/7
either [2]  11/23 22/16
electronic [2]  27/15 39/8
Eleventh [3]  8/13 30/15 47/7
else [5]  15/13 42/10 42/18 46/13 56/25
email [3]  1/19 2/1 42/14
emails [1]  29/20
employee [8]  14/24 15/3 15/11 16/16
16/21 23/6 27/18 28/19
employee's [1]  28/23
employees [1]  27/11
employment [1]  23/8
end [4]  28/11 35/25 55/17 59/16
ended [2]  14/7 17/3
engaged [2]  33/19 48/17
engaging [1]  27/12
England [4]  3/14 3/16 3/19 3/21
enough [12]  30/19 31/9 33/2 37/22
40/18 40/20 45/25 48/14 48/23 50/8
50/23 51/3
entire [2]  35/16 44/16
entitled [1]  60/8
essentially [2]  5/17 19/11
establish [1]  9/14
even [11]  6/6 28/23 35/23 35/25 40/16
41/17 43/19 43/22 45/13 45/23 46/9
evening [1]  35/6
event [1]  52/19
eventually [2]  56/1 56/7
every [2]  47/6 47/7
everybody [1]  53/8
everything [1]  38/22
evidence [50]  9/6 14/12 16/4 19/14
20/18 20/21 22/2 23/23 26/15 26/21
26/25 35/7 35/9 35/19 35/22 35/24
36/7 36/13 36/14 36/17 36/21 36/25
37/11 37/14 37/20 37/22 39/2 39/9
41/11 41/13 41/21 42/1 42/8 42/16
43/5 43/14 48/14 48/17 48/20 48/21
49/2 51/13 51/18 51/23 51/24 52/7
52/14 54/1 54/2 55/12
evolving [2]  34/11 43/20
examine [1]  33/23
example [2]  8/15 12/14
excelled [1]  56/5
except [1]  39/1
excerpt [2]  54/6 54/8
excluded [1]  57/8
excuse [1]  3/12
existed [1]  5/17
explain [1]  3/7
explains [1]  43/10
explanation [2]  16/7 26/14
explicit [1]  46/10
express [1]  19/9

extends [1]  30/8
extent [5]  3/12 38/22 39/5 52/22 53/11
extremely [2]  44/4 50/9

**F**

fact [21]  3/13 7/10 8/14 8/16 9/2 9/8
11/2 11/20 11/22 11/23 15/4 25/18
28/19 29/10 29/22 29/25 41/24 42/25
45/7 46/22 48/3
fact-based [1]  8/14
facts [9]  5/8 5/19 5/22 12/2 30/21 45/18
50/2 50/14 52/10
factual [1]  33/9
failed [1]  33/2
failing [1]  34/12
failure [3]  26/22 32/25 37/25
fairly [1]  5/5
falls [1]  10/14
family [9]  19/21 44/4 44/16 45/8 45/9
45/12 48/12 49/10 52/5
far [4]  24/15 35/3 40/10 51/25
February [2]  13/4 54/14
Federal [2]  60/3 60/19
feel [2]  3/6 7/5
Felt [1]  38/16
figure [1]  28/2
file [1]  27/25
final [1]  53/3
finally [1]  21/10
find [7]  10/12 28/12 32/2 32/19 37/19
45/19 51/19
finding [1]  5/22
fine [1]  7/1
fired [2]  56/6 56/8
first [14]  4/6 7/2 12/24 21/13 23/19
23/21 24/9 24/24 27/10 27/23 29/9
41/10 46/23 52/15
fit [1]  54/9
five [1]  7/17
focus [1]  6/20
follow [6]  23/18 24/1 24/4 26/22 46/19
47/7
fondling [1]  50/8
foregoing [1]  60/9
forget [2]  3/25 55/17
form [1]  23/10
format [1]  60/9
forth [2]  34/24 41/15
forward [2]  6/12 49/8
found [6]  9/9 20/9 21/14 21/20 24/10
52/14
frankly [1]  11/24
freshman [1]  55/21
Friday [3]  3/2 58/4 59/8
front [4]  27/7 35/16 44/14 59/3
full [1]  28/3
fully [1]  52/18
further [12]  13/19 19/9 29/19 29/25
32/2 33/8 34/12 38/1 46/6 46/7 48/3
53/16

**G**

GA [2]  1/17 1/24
GAMD.USCOURTS.GOV [1]  2/7
Gatlan [10]  8/6 8/21 9/1 9/12 9/15 9/20
9/24 10/5 10/9 11/19
Gatlan's [1]  21/16
gave [3]  16/7 17/25 38/7
general [2]  12/10 12/21 15/11

generally [2]  14/2 50/24
genuine [4]  5/20 9/5 9/16
GEORGIA [4]  1/1 1/6 3/4 60/5
Gepser [1]  7/3
get [11]  3/8 12/22 14/10 16/3 21/5 21/7
25/10 28/6 42/2 59/5 59/7
gets [2]  20/3 21/11
getting [5]  12/9 16/20 35/5 39/25 54/2
git [1]  31/5
give [5]  5/21 36/14 53/1
given [1]  57/22
giving [1]  16/20
go [18]  6/12 8/11 12/12 12/20 13/14
13/19 14/19 38/19 38/24 41/18 43/21
45/25 50/18 52/7 52/15 53/6 57/18
59/2
goes [4]  13/14 20/6 23/5 58/24
going [40]  3/12 5/3 6/8 6/19 6/21 8/18
13/18 14/10 14/25 15/5 16/3 18/12
20/24 20/25 21/5 21/7 22/5 22/13
23/16 24/5 24/9 27/24 33/7 33/20
34/6 34/17 34/18 34/19 35/19 37/23
39/17 41/10 44/8 45/21 45/23 52/21
52/23 53/14 57/23 58/10
gone [1]  11/14
good [8]  3/6 4/7 4/12 4/14 6/3 6/7
52/15 59/11
got [42]  5/4 5/5 10/22 10/25 11/7 11/22
12/1 15/21 18/21 24/8 27/9 33/18
33/20 33/20 33/22 35/21 39/14 44/11
49/24 52/15 56/6 56/13 58/17 59/1
gotten [1]  46/10
gradation [1]  27/22
grade [6]  54/10 55/20 55/23 55/24 56/2
56/3
grades [1]  54/10
graduate [1]  56/1
grant [2]  50/25 58/2
granted [3]  4/18 5/1 37/19
grasp [1]  12/17
groomed [1]  19/11
grooming [2]  19/13 45/11
guardian [1]  44/17
guess [1]  52/22
guided [1]  27/2
Gunn [1]  4/2
guy [1]  45/11

**H**

had [41]  3/18 6/22 7/6 9/1 14/8 16/23
17/19 19/5 19/21 20/8 20/12 20/14
20/19 20/22 20/23 21/13 21/17 23/11
24/18 24/19 24/19 26/16 28/23 29/18
29/19 30/3 32/15 32/20 35/6 39/7
40/25 42/10 42/11 42/13 43/10 44/5
46/10 46/14 48/16 48/20 49/9
Haden [1]  4/9 4/12 7/1
hallboothsmith.com [1]  2/1
hand [2]  23/16 41/15
handled [2]  15/17 46/14
hannah [3]  1/13 1/19 4/7
happened [5]  9/2 16/15 20/19 22/22
27/16
happening [7]  11/1 11/5 11/8 11/13
17/3 32/20 43/7
happens [2]  10/17 20/4 21/9
harassment [7]  7/5 22/11 30/17 51/6
51/8 51/10 52/7
hard [1]  51/7
hard-line [1]  51/7

## H

harder [1]  50/16
harm [1]  19/17 24/19
has [18]  9/22 10/18 10/24 11/7 11/17
19/11 22/24 28/5 31/5 34/25 39/15
45/8 50/23 52/18 53/2 53/8 58/24
59/10
have [89]
haven't [1]  45/17
having [3]  20/6 22/25 45/4
he [80]
he's [5]  10/22 10/25 54/20 55/15 56/13
head [2]  50/25 53/8
health [1]  24/18
heard [2]  41/15 42/9
hearsay [9]  41/11 41/13 41/22 42/8
42/22 53/17 54/3 54/5 55/11
held [1]  60/8
helped [1]  9/12
helpful [3]  12/6 12/16 59/10
her [62]
here [21]  3/8 3/11 5/25 7/12 8/18 12/5
24/17 28/2 31/7 32/1 32/18 32/18 36/4
37/16 40/21 43/7 44/8 48/9 48/24
52/17 53/25
hereby [1]  60/5
herself [1]  19/10
Hey [1]  17/21
Hi [1]  4/7
high [4]  8/2 8/20 55/22 56/1
higher [2]  15/13 43/22
highlighting [1]  19/22
him [29]  9/25 11/13 19/17 20/14 23/20
24/12 24/12 25/20 37/23 37/24 38/7
38/7 38/16 38/17 39/1 39/22 39/25
40/18 40/19 40/24 43/17 44/9 44/16
48/22 50/3 50/8 52/23 56/12 56/16
his [41]  9/2 9/5 10/6 10/7 10/11 10/12
10/16 10/17 10/20 10/23 10/23 11/6
11/7 11/17 17/18 20/9 21/21 22/25
24/10 24/14 29/20 32/14 32/14 33/1
33/5 34/4 37/4 37/5 38/15 39/11 39/11
43/3 43/12 46/4 46/15 48/12 48/23
49/13 53/22 53/23 55/15
history [4]  3/13 14/8 19/7 33/1
home [1]  3/10
hone [3]  5/8 6/3 12/11
Honor [64]
HONORABLE [1]  1/9
hook [1]  45/3
hopefully [4]  12/13 57/23 58/3 59/7
hospital [19]  13/17 14/13 14/25 17/12
17/16 17/17 18/3 19/15 19/20 19/25
20/4 20/5 35/24 37/10 38/13 43/16
48/11 49/11 52/4
hospitalization [1]  12/25
hospitalized [1]  18/15
house [1]  21/1
how [17]  6/22 6/23 9/16 10/5 10/8 12/8
15/16 17/22 18/17 29/4 39/23 39/24
42/2 47/13 47/14 54/10 55/13
however [3]  5/12 24/18 34/22
HR [4]  14/20 14/20 18/20 29/12
HR's [1]  18/16
human [4]  8/3 8/19 12/24 14/18
hypothetical [2]  50/13 50/19

## I

I'll [3]  12/22 41/5 53/3
I'm [16]  3/11 5/3 12/9 14/10 15/18 21/6
26/9 27/4 27/9 28/1 38/6 38/18 39/2
46/25 50/13 52/22
I've [7]  5/4 6/2 38/8 39/24 53/5 57/21
57/22
identify [1]  4/5
IEP [1]  20/8
if [60]  5/15 6/6 6/13 11/4 12/20 12/23
13/13 14/19 22/14 28/18 28/20 28/23
29/18 30/5 30/9 30/20 31/22 31/23
32/3 32/6 35/21 35/25 36/20 37/21
39/7 39/15 39/17 41/21 41/22 41/24
42/20 43/17 44/15 45/3 45/7 45/13
45/23 46/12 46/18 48/20 49/4 49/9
49/18 50/6 50/23 52/5 52/7 52/9 52/13
53/5 53/6 57/16 57/24 58/2 58/13
58/16 58/24 59/2 59/3 59/4
ignore [1]  15/4 34/17
ignored [2]  5/17 12/4
importance [1]  19/22
important [7]  6/2 6/4 6/4 6/5 12/10
24/17 28/9
Importantly [1]  45/13
impose [3]  30/11 32/1 32/2
imposed [1]  26/20
imposition [1]  30/4
improper [3]  31/25 32/11 32/17
in [181]
inappropriate [31]  5/15 8/24 10/25 11/5
11/8 11/18 13/1 15/19 15/24 16/10
16/13 22/17 23/12 25/1 30/6 33/1 34/3
34/4 35/13 35/17 35/25 36/19 42/10
48/7 48/8 49/3 53/22 53/25 55/1 55/10
55/12
inappropriately [5]  12/4 23/1 28/19
32/16 42/14
incident [1]  24/6
include [1]  47/24
includes [3]  27/14 27/22 38/12
including [2]  23/7 36/19
increasing [1]  27/22
independence [1]  3/16
indicate [1]  22/4
indifference [22]  5/20 5/23 6/20 9/17
12/17 13/15 15/7 16/5 23/22 26/21
27/1 29/8 33/3 33/10 33/25 34/14
37/17 40/12 40/14 41/3 50/10 50/15
indifferent [22]  5/10 5/16 6/22 7/4 7/14
12/5 12/8 12/9 28/13 28/16 28/19
28/21 28/24 29/1 29/5 31/19 35/11
39/20 43/23 44/20 47/8 49/18
individuals [1]  40/23
ineffective [1]  9/23
inexcusable [1]  5/12
infer [1]  11/24
inferences [1]  28/12
inflict [1]  19/16
inform [2]  15/22 15/25
information [3]  15/11 33/23 49/10
informed [2]  17/7 17/10
informing [1]  16/4
injury [1]  29/1
inordinate [3]  34/25 37/9 52/3
inquiry [1]  8/14
instance [2]  37/16 54/3
instances [1]  9/18
instead [1]  36/15
instructed [1]  23/4
insufficient [3]  24/15 24/16 37/25
insurance [2]  56/21 57/6
insurances [1]  56/20
integral [1]  24/23
intentional [2]  56/21 57/8
intentionally [1]  37/2
intentional [2]  56/21 57/8
interested [2]  6/10 26/9
intermediary [1]  37/13
interpretation [6]  26/23 30/18 37/7 43/4
43/9 43/13
into [5]  12/22 13/14 32/7 43/12 45/1
investigate [14]  14/23 17/3 22/20 29/25
32/2 33/7 34/12 35/21 38/1 40/21 46/6
46/7 48/3 49/14
investigated [3]  32/19 32/21 52/13
investigates [1]  22/24
investigating [2]  29/19
investigation [1]  22/12
involved [4]  24/8 25/19 31/17 43/9
is [217]
isn't [1]  48/18
isolated [1]  10/2
isolation [1]  16/2
issue [14]  5/12 7/2 7/9 8/8 8/16 31/4
31/13 36/4 36/7 46/21 47/2 48/18
50/21 57/23
issues [4]  5/24 24/18 43/18 53/10
it [144]
it's [27]  4/25 5/2 7/3 7/5 7/11 8/7 10/7
15/16 17/21 18/21 29/12 30/2 30/14
30/14 32/6 33/20 36/15 41/21 41/22
41/24 51/16 51/17 51/21 51/22 51/22
52/12 53/19
its [2]  43/1 46/1
itself [1]  16/17
IX [2]  45/25 47/20

## J

JANE [28]  1/4 4/4 8/24 9/1 9/8 10/2
10/16 11/16 12/25 14/5 14/8 15/1
15/12 16/18 16/20 17/11 17/15 17/25
20/25 21/3 24/17 24/25 27/16 42/17
44/5 54/15 55/20 55/21
JFK [5]  30/14 30/21 31/14 31/22 34/19
JOAN [4]  2/6 2/7 60/3 60/18
John [2]  4/9 4/12
judge [2]  1/10 30/24
judges [3]  3/13 3/16 3/20
judgment [12]  5/2 12/12 37/19 39/19
50/14 57/10 57/17 57/25 58/2 58/17
58/23 59/8
judicial [2]  45/18 60/10
June [1]  12/23
jury [23]  7/10 8/16 28/12 34/3 34/5
34/13 36/10 36/12 36/13 37/8 41/2
47/14 47/24 47/25 48/6 48/25 49/6
49/17 50/23 51/3 51/18 52/25 58/17
just [41]  3/12 6/9 6/22 8/15 10/3 10/6
12/4 13/12 16/2 24/3 28/18 30/23 32/3
32/9 33/4 38/20 38/21 43/11 43/21
43/21 44/5 44/12 45/16 47/7 47/18
50/3 50/8 50/25 51/9 52/7 52/10 52/12
52/12 52/23 53/1 53/19 54/9 56/13
57/1 58/1 59/5
justified [1]  38/16

## K

KB [1]  8/13
keep [3]  5/6 6/9 22/13
kind [4]  6/9 14/9 36/6 52/4
kinds [1]  22/22
kiss [1]  48/22
kissed [1]  49/5

## K

kissing [2]  49/12 50/7
knew [35]  10/5 10/7 11/21 11/23 11/24
12/15 12/22 12/24 20/18 20/21 20/22
23/13 26/16 31/24 32/10 32/13 32/15
33/4 33/5 33/5 36/18 36/20 36/22
36/25 37/4 38/13 38/15 40/19 40/25
41/25 42/22 42/25 47/16 47/17 47/25
know [24]  3/11 5/14 8/23 11/19 11/22
13/19 18/24 26/23 34/7 34/16 39/16
39/18 40/10 41/17 42/1 51/8 51/15
51/15 51/19 54/1 56/23 58/3 59/2 59/9
knowing [4]  5/17 35/7 48/2 52/23
knowledge [10]  7/6 8/25 9/1 10/18
21/13 28/21 30/3 44/1 44/5 51/17
known [4]  30/5 43/15 47/20 51/17
knows [2]  38/11 38/11

## L

lack [3]  3/7 3/13 9/19
LAND [1]  1/9
language [1]  30/24
laptop [1]  6/25
larger [1]  54/8
last [2]  35/6 54/11
later [8]  3/19 3/23 8/7 9/13 18/14 22/12
46/11 49/25
latest [1]  58/4
latter [1]  35/7
law [14]  10/18 23/7 27/19 28/14 30/10
40/13 47/2 47/14 47/15 48/16 48/16
50/9 50/22 51/6
lawyer [2]  4/21 6/7
lead [1]  35/18
leadership [2]  42/12 42/12
leading [1]  35/3
learn [1]  9/24
learned [5]  18/4 21/21 26/11 29/5 45/7
learning [2]  29/7 43/15
learns [1]  26/11
least [2]  16/24 46/6
leave [1]  3/10
left [4]  3/10 17/2 28/10 44/2
legal [5]  3/24 56/12 56/15 56/16 56/17
Less [1]  40/2
let [4]  6/8 39/17 41/6 53/3
let's [4]  4/5 22/23 42/24 46/23
lets [1]  38/8
letters [1]  46/10
level [1]  56/3
liability [5]  5/13 30/5 45/6 45/25 56/20
liable [5]  5/13 5/15 28/17 28/18 28/22
light [1]  47/1
like [15]  16/2 18/9 22/12 26/22 30/10
31/9 31/22 34/9 36/5 43/21 44/13
55/16 57/13 57/13 58/25
likelihood [5]  31/10 32/6 36/18 51/10
51/19
likely [7]  38/25 39/16 43/6 46/9 47/17
48/10 58/25
limited [1]  52/17
line [9]  11/14 19/1 19/3 21/10 35/13
35/17 38/18 51/7 56/24
lines [3]  21/8 43/2 46/15
lips [2]  49/5 49/12
little [2]  3/21 57/5
locate [2]  9/8 9/12
lone [1]  20/11
long [3]  39/23 39/25 53/14
look [5]  15/13 25/15 30/20 39/17 50/24

looked [1]  13/20
loose [1]  30/24
lot [2]  11/3 34/22
lunchtime [1]  20/8
Lynn [2]  8/3 8/19
Lynne [1]  18/20

## M

ma'am [1]  53/20
made [8]  5/15 14/18 16/16 44/4 46/2
46/4 46/5 46/8
mail [10]  9/7 17/19 17/20 17/23 17/23
17/24 17/25 18/7 49/25 54/8
mails [2]  27/14 46/11
main [1]  53/10
maintained [2]  24/13 25/22
make [6]  6/1 12/19 37/8 49/6 53/3 53/7
maker [1]  30/17
makes [1]  5/4
making [3]  16/12 36/16 43/19
mandated [1]  10/18
mandatory [1]  10/15
many [3]  10/5 10/8 28/1
MARCH [1]  1/5 3/2
Maria [3]  8/3 8/19 14/21
marked [1]  9/4
material [2]  7/10 8/16
matter [8]  4/18 41/23 46/14 47/13
47/15 48/16 50/22 60/8
matters [4]  6/23 37/5 52/2 55/19
may [30]  6/6 6/12 6/13 11/25 12/10
15/4 16/8 27/18 27/25 34/18 35/13
35/16 41/6 49/21 49/21 58/1 58/11
58/12 58/14 58/15 58/18 58/19 58/20
58/21 58/21 58/21 58/24 59/4 59/4
60/13
maybe [2]  3/21 35/15
me [19]  4/25 6/2 6/4 6/5 6/6 7/2 12/14
12/16 17/23 26/2 26/3 27/7 28/8 29/4
29/5 45/21 45/23 47/15 52/22
mean [5]  11/24 25/2 30/24 49/16 51/12
means [4]  6/6 8/5 8/17 31/2
media [1]  27/14
meeting [15]  9/14 20/22 21/17 22/3
22/3 22/6 38/10 39/23 39/24 39/25
40/6 44/1 47/16 47/22 50/2
meetings [2]  19/21 24/21
mental [1]  24/18
mentor [2]  19/23 19/24
mentored [1]  4/13
mere [2]  29/22 37/12
message [3]  14/25 29/14 35/5
messages [23]  13/1 13/23 14/4 14/7
18/8 18/9 19/7 21/12 23/13 38/4 38/4
39/4 39/8 39/18 40/10 40/23 42/2 42/4
42/11 53/24 55/8 55/9 55/11
messaging [1]  18/12
met [1]  54/15
Michael [5]  8/6 8/21 9/1 9/12 21/16
microphone [2]  5/7 5/7
middle [4]  1/1 3/4 21/1 60/5
might [1]  26/25
mind [1]  6/9
minor [1]  10/16
minute [2]  14/10 38/20
minutes [1]  53/1
Miranda [14]  8/6 8/21 9/15 10/19 20/10
20/11 20/12 20/15 20/16 20/18 20/25
21/2 21/2 21/4
misconduct [1]  31/20 33/14 33/22

missed [1]  18/9
missing [1]  10/13
misunderstood [1]  25/11
modified [1]  20/7
mom [15]  14/8 16/18 16/20 16/24
16/24 19/6 19/8 19/10 19/12 19/21
29/12 52/16 52/16 52/17 52/20
mom's [1]  14/5
moment [3]  27/3 42/25 56/17
money [1]  56/13
monitor [1]  10/20
monitoring [2]  10/16 43/20
more [24]  3/21 4/1 20/6 25/20 30/1
31/11 32/22 34/5 36/20 37/12 38/21
40/5 40/17 40/21 43/19 44/7 44/12
45/24 46/16 47/10 47/18 52/12 52/13
57/2
morning [7]  3/6 3/7 4/2 4/7 4/12 4/14
53/7
most [3]  3/16 26/7 44/13
mother [7]  18/11 41/15 44/6 44/16
44/17 44/19 44/24
mothers [1]  44/14
motion [3]  5/2 7/8 52/25
move [4]  8/18 18/16 49/8 52/15
Mr [1]  4/2
Mr. [4]  7/1 23/19 26/13 57/4
Mr. Bouchard [2]  23/19 26/13 57/4
Mr. Haden [1]  7/1
MS [13]  1/13 1/22 4/13 5/5 8/11 24/7
26/10 27/8 51/15 53/3 53/13 53/15
54/13
Ms. [3]  26/18 32/9 57/1
Ms. Sbaity [3]  26/18 32/9 57/1
much [3]  3/23 46/22 55/17
multiple [1]  24/21
must [2]  31/3 50/11
my [12]  3/7 3/10 3/22 5/25 10/21 14/1
17/22 24/7 25/3 26/18 45/4 57/21
myself [2]  31/12 55/17

## N

name [2]  4/19 8/2
names [1]  41/18
nature [3]  35/14 48/7 49/2
NE [1]  1/23
necessarily [1]  29/17
necessary [1]  53/12
need [10]  3/7 4/1 8/8 12/11 14/22 31/9
35/20 38/21 38/22 53/6
needed [2]  24/13 25/21
needs [5]  21/24 21/24 33/13 43/18
51/8
negligence [1]  36/8
never [2]  30/25 42/13
nevertheless [1]  23/25
next [16]  12/21 13/14 14/19 16/12
16/15 17/1 17/7 17/8 27/24 27/25 43/7
49/19 50/18 58/3 58/11 59/8
night [1]  21/1
ninth [1]  56/2
no [38]  8/9 9/24 15/20 15/20 19/10
19/16 22/6 23/11 25/6 27/17 28/21
28/23 30/20 36/14 36/21 37/17 38/9
41/13 45/16 47/16 48/6 49/1 49/16
49/20 49/23 50/15 50/20 52/14 52/20
56/12 56/16 56/17 56/18 56/21 57/10
57/12 57/15 58/9
nobody [1]  20/11
non [2]  41/11 41/13

**N**

non-hearsay [2] 41/11 41/13
none [2] 24/25 46/1
NORTHSIDE [1] 1/14
not [122]
note [2] 14/18 16/16
noted [2] 6/11 19/24
notes [4] 14/17 18/9 18/15 18/15
nothing [8] 20/20 24/24 25/20 43/7
46/13 46/16 48/24 49/18
notice [40] 6/21 8/9 10/25 11/4 11/7
11/12 12/3 21/18 26/14 28/23 29/16
29/22 29/24 30/16 31/4 31/16 31/18
32/15 32/17 33/13 35/20 36/5 36/10
36/16 37/20 41/22 43/5 44/7 44/11
44/17 47/21 47/22 48/6 48/8 48/15
51/9 51/22 55/2 55/4 55/10
noticed [1] 4/21
notified [1] 16/18
notify [2] 9/25 21/10
Notwithstanding [1] 19/8
now [1] 3/4 26/2 26/22 52/13
nurse [3] 13/5 13/22 18/9
nursing [1] 18/14
NW [1] 1/14

**O**

obligation [1] 10/20
observations [1] 24/25
observed [4] 18/10 21/5 25/1 30/22
obviously [4] 5/11 7/12 56/6 58/2
occasion [3] 23/19 24/7 26/12
occasions [1] 20/11
occurred [1] 48/3
off [11] 5/6 8/17 11/14 19/18 27/11
38/19 38/24 45/2 52/7 55/25 58/3
offered [2] 41/24 55/3
official [4] 40/14 60/1 60/3 60/19
oh [1] 52/20
okay [14] 3/24 6/15 6/18 28/5 29/15
32/7 32/17 35/20 37/7 41/5 44/24
52/14 53/13 59/10
old [1] 55/13
omission [1] 47/3
omissions [1] 45/14
on [89]
once [2] 36/20 44/25
one [24] 3/12 4/22 11/8 18/8 18/25
24/22 26/12 27/25 34/8 34/10 36/11
37/7 39/13 40/5 40/22 42/14 43/4
43/13 52/9 53/19 54/3 57/2 58/23 59/7
only [6] 7/3 33/18 41/14 42/16 48/7
49/24
open [1] 25/2
opportunity [2] 5/21 53/11
opposed [1] 24/1
opposing [1] 6/16
opposition [1] 3/21
or [46] 3/24 4/23 5/7 7/6 10/6 10/17
10/23 11/21 11/23 13/12 13/19 13/20
14/3 14/14 18/12 22/5 22/17 23/7
27/14 29/7 32/6 32/18 33/24 35/4
35/13 36/15 37/20 39/11 42/21 42/22
43/24 44/10 45/18 47/6 48/15 49/16
49/22 50/22 51/2 52/5 54/18 55/19
57/24 58/7 58/14 59/3
oral [5] 4/17 4/18 4/23 5/1 57/22
order [3] 48/3 57/23 59/8
originally [1] 3/20
other [25] 5/17 6/5 10/11 10/13 10/24

11/1 11/6 11/8 12/1 12/10 12/23 24/2
26/19 28/18 32/13 33/6 34/15 34/20
34/25 41/1 42/5 43/8 43/14 46/11 59/1
others [2] 37/8 58/7
otherwise [2] 12/9 57/17
our [12] 3/16 4/2 7/17 8/8 9/25 26/5
32/8 36/11 57/25 58/1 58/11 58/21
out [17] 10/12 12/7 20/9 21/1 24/10
28/2 28/10 31/12 32/2 32/19 37/10
42/24 44/2 45/19 51/7 57/24 59/8
outside [4] 34/23 35/2 52/4 56/14
over [2] 17/5 53/6
overly [1] 16/25
own [2] 19/11 54/20

**P**

page [2] 53/19 60/9
paraphrasing [1] 21/6
parent [14] 15/22 15/25 16/4 16/7
16/11 17/10 19/4 19/5 45/3 45/3 53/22
54/9 54/22 55/4
part [11] 5/24 6/20 7/7 20/7 24/23
26/21 37/18 44/3 44/15 45/14 56/15
participants [1] 4/6
particular [1] 12/15
particularly [2] 43/15 43/17
parties [1] 9/23
passionately [1] 49/12
past [3] 16/22 54/1 55/12
PEACHTREE [1] 1/23
pending [2] 5/11 57/11
pennlawgroup.com [1] 1/19
people [4] 12/1 12/2 16/19 44/13
per [1] 23/22
perceived [1] 45/14
perception [1] 44/15
perfect [3] 39/21 47/6 49/21
perhaps [2] 16/17 52/19 57/7
period [1] 46/12
perpetrator [1] 9/9
person [11] 4/23 7/4 7/6 8/15 12/8
12/15 14/13 26/7 33/19 40/25 43/19
personal [5] 17/23 27/13 39/11 45/18
52/3
personnel [2] 13/17 18/16
persons [10] 7/6 7/12 7/15 7/20 7/20
7/25 8/2 8/7 9/16 13/8
perspective [1] 16/24
phone [3] 16/17 19/5 29/11
phonetic [2] 7/3 8/3
phrased [1] 18/21
physical [5] 28/22 28/23 33/14 39/5
39/9
physically [4] 19/15 19/16 29/6 39/3
picture [2] 20/10 42/24
piece [3] 44/2 50/10 55/12
pinch [1] 55/17
pinpoint [1] 45/16
PKWY [1] 1/14
place [1] 29/9
places [1] 19/24
plaintiff [15] 1/4 1/12 4/6 4/8 4/9 4/13
4/17 33/15 36/5 37/17 38/9 41/10
41/14 42/9 49/22
Plaintiff's [1] 53/12
Plaintiffs [1] 42/4
plan [8] 24/20 24/23 25/19 37/6 37/13
43/10 43/18 43/20
played [1] 20/7
please [3] 6/18 12/20 50/20

plus [1] 48/21
point [26] 5/19 5/22 12/1 12/7 12/14
15/7 18/24 22/9 22/22 33/7 37/25
38/11 38/18 38/24 39/8 40/19 41/7
41/18 42/17 44/1 45/19 47/22 47/25
49/13 56/24 59/9
pointing [1] 6/5
policies [4] 9/21 22/10 22/14 22/17
policy [38] 23/2 23/5 23/7 23/14 23/18
23/22 23/25 24/1 24/2 24/4 24/15 25/5
25/8 25/14 25/15 25/20 25/24 26/9
26/10 26/19 26/22 26/24 26/25 27/2
27/5 27/7 27/9 27/15 27/19 27/20
27/21 27/22 28/2 28/4 28/5 47/7 57/5
57/6
policy-based [1] 24/2
pornographic [2] 17/18 18/1
pornography [4] 53/23 54/18 54/21
54/24
position [7] 8/8 22/8 28/14 32/10 42/20
45/2 51/16
possibility [15] 30/2 30/13 30/17 30/19
30/23 31/4 31/5 31/8 31/12 31/13
31/23 31/25 32/4 45/11 51/21
possible [2] 30/9 30/10
possibly [1] 30/5
potential [4] 13/24 14/20 29/24 43/2
potentially [2] 29/10 48/8
power [1] 36/2
PowerPoint [4] 5/25 27/9 28/9 41/6
practice [1] 3/18
pre [2] 57/25 58/16
pre-try [2] 57/25 58/16
precedent [1] 50/13
prefer [1] 5/7
premises [1] 27/12
preprepared [1] 6/6
presence [5] 34/4 34/9 35/22 43/3
47/11
present [2] 4/6 31/7
presentation [6] 5/25 6/2 6/7 53/12
53/14 54/2
presented [4] 51/1 52/8 52/9 52/10
presumably [2] 38/12 46/13
pretrial [3] 1/9 58/6 58/12
pretrials [2] 57/25 58/11
prevent [3] 33/21 34/9 34/11
previous [6] 24/25 26/14 33/1 33/5
41/18 42/2
previously [1] 41/12
primary [1] 44/17
principal [50] 8/2 8/19 9/7 12/24 14/21
20/14 20/22 21/16 21/21 21/23 22/4
22/9 22/14 22/24 23/18 23/25 24/8
24/11 25/4 25/7 25/13 26/11 26/11
26/19 27/3 28/13 35/4 38/7 38/11
38/24 39/21 39/24 40/18 40/22 43/1
43/12 44/3 44/11 44/15 45/10 45/24
46/14 47/16 47/20 48/22 48/23 49/9
49/13 49/17 52/23
principal's [1] 26/22
principals [1] 52/6
principles [1] 5/14
prior [5] 30/8 42/13 55/10
private [1] 17/18
probably [4] 20/4 52/16 56/24
problem [5] 12/5 17/7 21/10 21/14 45/4
procedures [1] 9/23
proceedings [3] 3/1 59/15 60/8
program [1] 39/15

**P**

produced [2]  41/16 41/17
professional [3]  21/19 22/11 43/10
professor's [1]  34/23
prohibited [4]  23/13 27/10 27/11 27/13
prompted [1]  9/25
pronounce [1]  4/19
proof [1]  34/21
proper [1]  3/7
prosecuted [2]  56/10 56/11
protect [1]  48/4
protest [1]  3/18
provide [2]  25/3 56/19
provided [4]  23/6 24/1 27/18 27/21
providing [1]  24/22
pull [1]  20/9
punished [1]  41/12
purpose [2]  41/20 41/22
purposes [3]  11/2 39/19 59/6
pursuant [1]  60/5
pursue [1]  11/6
put [17]  21/18 27/25 28/9 29/15 29/21
29/23 30/25 31/12 32/15 32/17 35/20
44/7 44/11 48/14 51/9 54/16 58/1
puts [2]  36/2 45/1

**Q**

question [25]  10/21 11/2 11/20 11/22
14/1 24/6 24/7 24/25 25/3 25/12 29/10
34/13 37/16 41/2 44/10 46/23 47/19
47/21 48/13 48/25 49/6 49/17 50/17
51/2 52/25
questions [1]  5/6
quite [1]  11/24

**R**

raise [2]  14/2 14/4
raised [5]  13/24 14/2 18/23
rarely [1]  30/10
rather [1]  33/21
reach [5]  8/8 59/1 59/3 59/4 59/4
read [1]  5/3
reads [1]  26/19
ready [1]  57/17
real [2]  5/12 48/13
really [8]  7/7 12/11 48/9 48/18 50/21
51/14 51/16 53/7
reason [5]  24/17 25/13 28/10 34/8
49/24
reasonable [11]  26/14 28/12 31/9 32/6
43/4 43/8 47/16 47/20 51/10 52/16
52/20
reasonably [7]  11/24 33/24 35/4 35/18
37/22 40/20 47/10
reasoning [1]  56/24
reasons [4]  24/11 26/2 34/10 37/18
rebut [1]  36/25
rebuttal [3]  53/4 53/11 53/15
receive [2]  23/8 45/10
received [1]  40/9
receives [1]  14/24
receiving [2]  13/1 31/18
recently [1]  4/22
recipient [1]  40/14
record [10]  9/5 10/8 10/10 11/18 19/24
20/20 20/21 23/12 31/1 36/21 36/25
41/11 41/14 42/8 42/15 59/16
reference [1]  53/24
referenced [1]  53/25
referencing [1]  47/23

referring [2]  24/8 39/24
reflects [1]  9/5
regard [10]  5/20 10/22 12/7 14/12
27/23 28/15 37/24 41/1 42/4 57/1
regardless [1]  37/19 45/22
regularly [1]  37/10
regulations [1]  60/10
related [3]  17/21 34/25 37/6
relation [1]  54/12
relations [1]  23/14
relationship [33]  29/6 29/16 29/18
29/24 31/6 31/17 31/25 32/18 33/8
34/6 34/11 34/17 34/18 35/5 35/8
35/10 35/19 35/25 36/1 36/18 36/19
36/22 37/23 43/6 43/11 45/8 48/2
48/15 48/18 49/14 52/5 52/12 52/14
relationships [3]  23/12 27/13 35/6
relayed [1]  14/14
released [3]  20/3 20/5 24/9
relevant [2]  27/1 55/20
remedied [1]  47/5
remedy [4]  40/15 46/3 47/3 50/11
remind [1]  25/21
reminded [1]  24/12
reminder [1]  38/8
reminding [1]  38/17
report [7]  10/18 10/21 21/2 42/11 42/13
53/18 53/21
reported [5]  9/20 38/14 60/8
reporter [4]  10/15 60/1 60/4 60/19
reporting [2]  9/19 10/11
reports [1]  14/6
representation [1]  44/1
request [2]  5/1 53/11
requested [3]  4/17 4/23 39/7
require [9]  22/11 22/12 22/18 22/20
22/23 25/24 26/3 26/24 53/14
required [7]  23/2 24/15 26/19 29/24
30/15 38/2 39/21
requirement [1]  3/24
requires [1]  28/15
resign [1]  56/9
resources [4]  8/3 8/19 12/24 14/19
respectfully [1]  53/10
respond [2]  41/6 41/9
respondeat [1]  5/13
response [8]  15/8 15/11 21/23 23/2
23/17 29/7 33/24 39/20
responsibility [1]  10/13
responsible [2]  10/10 10/15
retrieved [1]  39/8
reviewing [1]  10/10
right [6]  4/5 5/3 21/18 38/10 38/20
57/13
rights [1]  39/15
rise [2]  3/3 59/12
risk [1]  36/3
risks [1]  52/6
robe [2]  3/10 3/13
robes [7]  3/11 3/12 3/14 3/15 3/17 3/20
3/23
roommate's [1]  54/18 54/21 54/24
roommates [2]  53/23 54/20
ruled [1]  30/7
ruling [1]  57/16
rush [1]  3/8
Russel [1]  4/16

**S**

safety [1]  44/20

said [26]  12/6 13/20 15/4 18/20 19/6
21/24 22/9 25/4 26/15 27/9 29/13
29/15 30/24 38/7 42/18 45/3 47/4
48/22 50/1 52/20 53/22 55/5 55/15
55/16 57/1 58/15
same [6]  8/18 10/14 10/18 48/20 48/24
50/1
sand [1]  50/25
sat [2]  21/23 40/18
saw [4]  13/5 20/11 48/22 49/5
say [18]  13/20 15/13 25/13 27/20 27/22
31/12 31/15 34/15 38/19 38/21 39/16
51/12 53/2 53/2 53/7 53/15 57/2 58/14
saying [6]  17/20 50/2 50/8 52/24 52/24
55/11
says [9]  23/6 26/9 26/10 26/18 30/15
35/6 48/16 49/4 49/11
SBAITY [14]  1/13 4/7 4/13 4/20 5/5
8/11 24/8 26/10 26/18 27/8 32/9 53/3
53/15 57/1
Sbaity's [2]  51/15 53/13
schedule [3]  20/6 58/2 58/3
scheduled [1]  58/18
scheduling [2]  20/7 59/6
school [80]
school-related [1]  17/21
screen [4]  6/24 12/20 53/19 54/9
screenshot [1]  17/20
screenshots [1]  13/13
se [1]  23/22
seat [1]  5/6
seated [2]  3/6 41/7
second [4]  9/3 20/17 27/17 41/18
Section [1]  60/6
see [9]  13/12 14/1 29/25 33/8 38/7
38/22 39/18 49/14 50/21
seeing [1]  22/16
seem [3]  16/25 38/20 45/9
seemed [1]  18/22
seems [8]  5/18 26/12 30/10 31/9 31/22
32/2 35/8 43/21
seen [2]  29/20 35/1
self [2]  19/17 24/19
self-harm [1]  24/19
semester [1]  9/3
seminar [2]  52/6 52/11
seminars [1]  52/10
send [1]  17/18
sending [1]  18/1
sensitive [1]  43/19
sent [2]  17/20 42/10
separate [1]  20/11
serious [2]  18/18 38/9
seriously [2]  18/23 33/2
services [1]  24/23
session [1]  3/5
sessions [1]  19/22
set [4]  34/7 57/21 58/8 58/24
sets [1]  51/7
setting [4]  19/23 20/23 21/17 58/10
several [5]  19/21 19/24 26/5 53/22
54/25
severe [2]  24/18 24/19
severity [1]  27/23
sex [2]  44/14 45/4
sexual [42]  8/24 22/10 28/22 28/23
29/6 29/16 29/17 29/24 30/6 30/17
31/6 31/17 31/19 32/18 32/18 33/8
33/14 33/22 34/6 34/11 34/16 34/18
35/5 35/6 35/8 35/9 35/14 35/19 36/1

**S**

sexual... [13]  36/19 36/22 37/23 38/1 39/9 43/6 48/1 48/7 48/15 48/17 49/2 49/14 51/6
sexual-harassment [1]  51/6
sexually [5]  17/4 17/15 19/15 35/21 39/3
shall [2]  23/6 27/17
she [84]
she's [4]  18/25 35/23 37/8 37/10
short [1]  53/3
should [26]  9/20 9/25 11/13 11/14 13/19 14/15 22/9 23/1 23/14 23/25 27/2 32/15 32/16 32/19 34/3 34/5 36/20 37/19 40/17 40/20 43/14 45/24 47/20 51/17 52/11 59/7
shouldn't [1]  21/8
show [5]  9/6 9/13 12/2 17/19 50/11
showed [1]  46/2
showing [1]  9/23
shows [6]  11/23 12/21 13/4 23/23 36/1 47/3
sign [2]  34/5 52/13
simply [7]  14/14 23/19 26/25 28/24 36/8 37/23 40/24
since [1]  17/21
sir [2]  4/3 58/9
sitting [1]  38/16
situation [8]  12/3 32/14 32/18 38/16 43/22 44/24 47/5 52/18
slap [1]  23/16
slide [4]  7/18 13/4 17/19 27/17
slides [5]  6/13 9/6 9/13 12/23 21/6
so [46]  3/11 4/18 5/18 6/2 7/15 10/17 12/6 13/14 14/24 16/7 16/15 17/3 17/10 17/19 18/3 21/17 22/14 23/9 23/15 23/16 24/24 25/24 27/15 28/1 31/8 33/21 35/19 36/15 39/7 44/14 45/12 46/22 49/7 50/18 51/25 53/1 53/24 54/2 54/16 55/2 57/24 58/1 58/13 58/20 59/5 59/8
social [1]  27/14
some [22]  6/13 6/16 9/18 10/24 11/7 11/22 12/2 16/7 22/21 24/2 25/24 26/20 31/9 36/1 38/14 41/17 52/4 52/17 52/22 55/4 57/22 59/1
somebody [8]  8/14 15/13 19/3 21/9 42/10 42/17 42/18 45/9
somehow [1]  44/25
someone [3]  11/23 21/10 33/21
something [22]  9/25 10/25 11/5 11/8 11/14 14/22 14/22 21/8 22/3 22/18 27/25 32/7 34/9 34/25 37/12 44/8 47/18 51/1 51/2 51/3 51/4 53/6
speak [1]  5/6
speaking [1]  27/4
specially [1]  58/24
specific [6]  5/8 5/22 27/6 31/20 31/20 50/13
specifically [10]  7/3 9/24 10/3 10/5 11/17 12/7 13/4 25/3 31/5 33/13
specifics [1]  12/22
speculation [1]  30/10
spend [1]  20/8
spending [11]  9/1 10/2 24/10 26/7 26/13 32/13 32/22 34/22 37/4 38/15 44/16
spoke [1]  14/6
ST [1]  1/23
staff [1]  23/14

staff-student [1]  23/14
stage [5]  25/20 25/25 26/4
standard [12]  30/9 31/14 31/15 31/22 32/3 32/9 34/15 36/6 36/8 36/10 36/11 39/20
start [2]  3/22 5/6
started [2]  55/25 56/2
starting [2]  8/17 58/20
state [2]  23/7 27/19
stated [1]  55/4
statement [1]  41/14
STATES [6]  1/1 1/10 3/3 60/4 60/6 60/10
statutory [1]  3/24
STE [3]  1/15 1/16 1/23
stenographically [1]  60/7
step [6]  15/18 15/18 15/19 15/20 16/1 16/1
steps [2]  16/3 16/12
still [6]  17/11 18/15 28/22 43/14 49/8 50/14
stop [1]  39/1
strategy [1]  56/15
strengths [2]  45/17 45/20
strong [2]  11/25 12/1
struggled [1]  56/1
stuck [1]  50/25
student [49]  9/13 12/3 13/12 13/18 13/24 14/3 14/15 14/20 15/5 21/12 22/16 22/16 22/17 22/25 23/2 23/14 24/10 24/18 26/12 27/11 28/20 29/3 30/21 31/6 31/18 31/20 31/24 34/22 35/1 35/15 35/16 36/2 37/1 37/4 42/25 43/3 43/11 43/18 44/21 46/10 48/21 49/4 49/11 49/12 49/25 51/7 52/2 52/6 56/5
student-teacher [1]  22/16
students [20]  11/18 16/12 21/25 24/13 26/8 26/17 27/13 32/16 33/6 40/1 41/1 41/13 42/5 42/11 42/14 46/11 53/22 54/17 54/23 55/5
stuff [1]  12/10
subject [2]  23/6 27/18
subjected [2]  3/18 45/2
submit [1]  41/17
submits [1]  21/12
submitted [1]  42/21
subordinate [1]  38/14
Subsequent [1]  39/2
substance [4]  13/11 14/14 14/18 29/13
substantial [1]  32/3
such [1]  34/6
suffered [1]  29/2
sufficient [7]  5/19 28/11 29/23 30/11 30/16 50/4 51/18
sufficiently [3]  28/9 33/2 53/14
suggest [2]  16/24 52/10
suggesting [3]  29/22 48/1 54/17
summarize [3]  29/4 29/5 53/1
summary [11]  5/2 12/12 37/19 39/19 50/14 57/17 57/24 58/2 58/17 58/23 59/8
summer [1]  38/4
superintendent [3]  8/5 8/17 14/21
superior [5]  5/14
supervision [1]  10/17
supervisor [1]  7/11
support [4]  5/9 5/22 26/16 30/4
supporting [1]  41/14
supposed [2]  21/15 55/24

Supreme [2]  3/19 3/22
sure [8]  4/25 9/13 12/19 27/9 35/15 43/19 53/7 59/9
Surely [1]  27/22
suspect [3]  35/4 37/22 47/10
suspected [2]  22/15 40/20
suspend [1]  39/17
suspended [1]  28/1
switch [1]  6/23
system [1]  54/10

**T**

take [9]  7/11 7/13 15/11 21/1 32/25 33/2 42/24 46/21 58/2
taken [4]  49/21 49/23 49/24 52/18
takes [1]  45/1
taking [1]  27/11
talked [1]  24/12
talking [15]  9/7 12/23 14/1 36/7 38/3 38/4 38/6 38/10 38/18 42/4 53/23 54/10 54/17 54/19 54/20
talks [1]  18/17
teacher [43]  5/11 8/24 9/10 10/9 12/3 13/6 13/12 13/18 13/25 14/3 14/16 14/20 15/1 15/6 15/12 17/15 18/13 19/7 20/16 20/17 22/15 22/16 23/3 24/22 29/22 30/8 30/17 30/22 31/6 31/17 31/21 31/23 35/1 37/1 37/3 38/17 43/11 43/20 45/4 45/8 46/5 52/1 52/6
teacher's [6]  5/15 10/24 11/5 21/20 34/24 39/7
teacher-student [2]  14/20 52/6
teachers [12]  8/6 8/9 8/20 11/25 21/16 21/25 24/14 24/21 39/14 45/2 52/5 56/20
technical [1]  6/23
tell [9]  26/2 26/3 28/8 33/21 36/13 39/1 40/18 45/21 45/23
telling [1]  37/24 50/3
tentatively [3]  58/1 58/13 59/6
term [4]  58/1 58/11 58/18 58/22
termination [1]  23/8
testified [3]  18/1 26/6 42/9
testifies [1]  21/3
testifying [1]  42/17
testimony [7]  14/6 16/21 21/7 29/11 29/12 41/25 42/12
text [27]  13/1 13/20 13/23 14/4 14/7 14/14 15/4 18/8 18/9 19/7 21/12 23/13 29/14 35/4 38/3 38/4 39/4 40/9 40/23 42/2 42/4 42/11 53/24 55/8 55/9 55/11 55/14
texted [2]  26/16 32/16
texting [51]  13/6 13/12 13/18 14/15 14/25 15/5 15/12 16/8 16/17 16/22 18/4 18/5 18/12 22/17 23/1 26/15 28/20 28/25 29/23 30/1 31/24 32/11 32/22 32/25 33/4 33/6 34/4 34/9 34/24 35/22 35/23 37/1 37/2 37/10 37/12 37/24 38/12 38/13 41/1 41/12 42/14 42/3 43/16 47/10 47/18 48/10 48/11 49/10 52/2 52/3 52/12
texts [2]  13/12 40/1
than [17]  3/21 4/2 10/11 25/20 30/1 31/11 32/22 33/21 34/21 35/1 37/12 38/21 40/2 43/11 44/12 47/10 52/12
thank [7]  5/24 6/11 6/19 8/12 41/8 53/21 59/10
that [479]

**T**

that's [31]  6/7 7/1 11/2 11/20 12/5 14/1 19/6 20/10 20/16 21/13 25/10 26/7 28/1 28/10 36/8 37/7 40/11 41/5 42/20 42/22 44/2 45/19 45/24 46/1 46/12 48/9 48/18 51/14 53/23 56/14 59/6
their [22]  3/12 3/21 7/8 8/25 9/16 9/19 16/12 16/12 19/13 29/18 29/19 30/8 32/25 37/25 41/5 41/17 44/14 45/4 50/25 52/17 57/5 59/2
them [25]  13/2 13/23 15/25 16/4 16/12 21/5 22/20 24/22 29/15 29/21 29/23 29/24 32/15 32/17 33/22 36/12 36/23 41/17 44/7 45/1 49/5 49/17 51/2 51/9 58/8
themselves [3]  22/10 39/5 39/15
then [20]  3/19 12/4 12/22 15/21 20/3 29/20 31/23 31/24 32/8 37/23 49/13 50/21 52/13 52/14 52/16 52/23 53/3 53/4 53/5 58/17
theory [1]  50/12
there [97]
there'd [1]  42/1
there's [31]  7/17 7/22 11/22 13/18 15/5 15/12 20/20 20/21 21/14 26/10 31/25 33/9 35/4 35/14 35/22 35/22 36/21 37/17 39/2 41/13 44/2 50/15 50/22 51/19 52/13 52/21 52/25 53/6 54/1 57/5 57/10
therefor [3]  32/19 34/12 36/19
therefore [1]  7/13
these [12]  7/12 7/20 11/8 11/25 12/2 14/7 18/21 32/20 34/7 45/1 55/5 56/19
they [107]
they're [1]  9/8
they've [4]  3/11 33/19 33/20 33/22
thing [10]  8/18 10/19 19/21 21/3 25/16 27/12 40/5 48/24 53/13 57/2
things [4]  6/5 53/22 55/1 55/5
think [44]  3/19 5/4 9/5 12/8 15/10 15/14 15/19 15/24 16/13 23/23 24/9 25/4 25/11 26/15 28/8 31/2 31/3 31/11 31/12 35/12 36/24 36/24 37/15 38/23 43/25 44/14 46/21 47/1 47/4 49/7 49/7 50/3 50/9 50/14 50/16 51/15 52/1 52/9 52/15 52/20 53/2 53/5 56/13 56/24
third [2]  9/23 41/15
this [118]
Thomasina [7]  8/6 8/21 10/19 20/10 20/11 20/12 20/16
those [26]  5/22 8/9 9/3 11/1 12/20 13/11 21/8 22/11 22/21 26/2 34/8 34/8 34/10 37/18 40/3 40/7 41/15 48/13 50/13 52/9 52/10 55/11 58/23 59/3 59/5 59/7
though [1]  27/20
thought [5]  13/19 14/15 46/14 50/1 57/22
thriving [1]  56/4
through [2]  24/20 47/5
time [34]  5/21 9/1 10/3 12/24 17/5 18/2 18/11 21/13 24/9 24/10 24/14 26/7 26/13 26/19 27/16 32/13 32/22 33/1 33/5 34/23 36/11 37/4 37/9 38/15 38/18 43/5 44/16 51/1 52/3 54/12 54/13 55/14 55/15 59/9
time-wise [1]  54/12
timeline [2]  12/21 46/12
times [6]  9/3 9/4 9/5 10/5 10/8 22/17
tipped [1]  11/13

Title [3]  45/25 47/20 60/6
together [2]  30/25 35/2
told [13]  6/2 13/2 14/13 16/11 19/6 20/23 20/25 21/4 23/19 34/22 42/10 42/17 55/4
too [2]  44/4 52/19
took [12]  18/18 18/23 19/11 19/12 43/12
total [1]  10/8
touch [1]  6/21
touched [1]  7/8
touching [1]  7/2
toward [1]  4/10
track [2]  11/18 23/11
tradition [2]  3/14 3/24
traffic [1]  3/9
trained [2]  34/7 38/20
training [1]  45/10
transcript [4]  1/9 29/11 60/7 60/9
trial [7]  3/20 41/12 54/2 57/18 58/18 58/21 58/25
tried [4]  16/24 19/18 19/19 59/5
trips [1]  48/12
trouble [2]  21/6 21/7
Troupe [2]  30/14 30/21
true [2]  39/10 60/7
truly [1]  32/9
truth [3]  41/23 42/21 55/3
try [5]  36/10 57/25 58/16 58/22 59/6
trying [7]  9/8 10/12 19/25 25/10 26/7 28/1 45/16
two [25]  11/25 20/11 26/15 36/2 40/2 40/3 40/7 43/7 46/6 46/9 46/11 46/12 46/16 46/19 46/24 47/1 48/24 49/19 49/23 49/25 58/12 58/17 59/3 59/5 59/7
two-week [2]  46/12 58/17
type [2]  24/2 26/20
typing [1]  4/9

**U**

unbuttoned [1]  50/6
under [16]  7/3 8/13 10/14 10/17 23/13 27/19 30/10 30/22 39/13 39/20 40/13 45/25 47/20 50/13 57/5 57/6
understand [3]  3/17 10/22 13/16 22/4 26/24 27/8 29/21 32/9 36/24 39/14 44/23 47/14 50/12
understanding [7]  3/22 23/24 26/18 32/8 42/3 42/7 43/8
unexplained [1]  24/11
uniform [2]  3/7 3/13
UNITED [6]  1/1 1/10 3/3 60/4 60/6 60/10
unjustified [1]  34/9
unless [1]  10/25
unprofessional [1]  35/14
unrelated [5]  31/24 32/14 37/5 38/15 52/2
unsuccessful [1]  34/9
until [5]  3/23 22/22 56/5 59/1 59/4
untoward [1]  24/24
unusual [2]  18/17 18/22
up [26]  3/8 3/11 5/25 11/14 12/13 14/7 14/22 15/4 15/13 15/21 17/3 18/25 19/3 21/10 22/22 23/7 25/2 32/8 36/1 38/11 38/14 39/8 43/21 46/19 54/16 56/5
upon [1]  25/18 30/11 32/1 36/15 43/3 43/5 47/15
Uraian [1]  8/3 8/19 14/21

Urian [1]  39/21
Urian's [1]  44/3
us [1]  39/17
use [2]  17/22 31/13
usually [1]  57/21

**V**

Veritas [15]  12/25 13/3 13/22 17/8 19/20 19/21 20/19 20/21 21/11 24/9 27/16 38/5 38/6 40/23 43/1
very [3]  11/25 24/17 24/18
videos [2]  17/18 18/1
view [5]  7/16 7/17 29/8 33/3 33/9
violate [4]  25/4 25/7 25/14 27/4
violated [1]  25/15
violating [3]  22/11 22/15 26/25
violation [7]  23/22 23/25 27/15 27/17 40/15 46/3 47/4
violations [1]  22/21
visits [1]  48/12
vocal [1]  3/21
voluntarily [1]  56/9

**W**

wait [2]  33/21 38/20
want [9]  5/8 6/8 30/25 33/17 39/17 40/5 41/18 53/7 53/17
wanted [2]  53/7 56/25
wants [2]  49/22 49/22
was [191]
wasn't [6]  7/7 11/16 19/17 20/24 23/15 23/16
way [6]  3/10 12/16 19/23 30/8 52/17 55/25
we [43]  3/15 7/2 7/12 8/1 8/5 8/7 8/12 12/13 13/12 13/20 14/14 29/11 29/11 29/12 32/8 33/7 35/6 36/10 36/13 38/21 38/22 38/22 39/17 41/6 41/17 52/20 53/4 53/5 54/1 57/4 57/24 57/25 58/8 58/6 58/16 58/22 58/25 59/3 59/4 59/4 59/5 59/6 59/7
we'll [1]  32/7
we're [6]  8/16 8/18 12/23 16/3 27/24 58/10
we've [4]  44/11 53/9 58/17 59/1
weaknesses [2]  45/17 45/20
wear [3]  3/12 3/17 3/20
wearing [1]  3/23
week [5]  46/12 57/24 58/17 58/20 58/21
weekend [1]  59/11
weeks [19]  40/2 40/4 40/8 43/7 46/6 46/9 46/11 46/16 46/19 46/24 47/1 48/24 49/19 49/23 49/25 58/23 59/3 59/5 59/7
weight [1]  36/14
Welcome [2]  4/11 4/17
well [14]  5/14 6/1 8/4 14/10 18/11 19/13 20/10 27/8 34/7 37/21 44/13 52/1 53/13 59/4
wellbeing [1]  44/21
went [4]  24/11 38/7 48/21 52/6
were [41]  3/11 3/16 3/20 5/15 5/16 6/22 7/6 9/22 9/22 12/2 12/5 12/8 13/12 13/23 17/6 18/9 18/15 19/22 21/18 21/18 24/21 26/2 26/14 28/18 28/24 29/1 29/4 29/25 30/22 32/20 37/2 44/22 45/20 45/23 48/17 50/7 55/4 55/5 55/15 57/17 58/12
weren't [1]  14/17

**W**

what [87]

what's [6]  16/17 34/20 35/3 36/9 43/24 51/10

whatever [3]  5/7 28/1 42/22

when [41]  3/15 9/10 11/17 12/22 14/6 15/21 17/6 17/6 17/8 18/20 19/13 19/17 19/17 21/4 21/9 21/14 21/15 21/20 22/25 23/18 24/1 24/8 26/10 29/5 33/20 35/23 38/3 38/6 38/11 43/1 51/12 52/16 55/15 56/2 57/21 57/25 58/7 58/7 58/16 58/22 59/6

where [30]  3/15 8/12 8/15 8/20 8/21 9/2 10/20 10/23 11/2 12/3 13/5 13/14 16/20 19/6 19/22 20/10 24/20 28/2 29/9 36/1 36/11 40/20 42/15 45/16 45/19 50/2 50/23 50/24 51/3 54/12

whether [34]  7/9 8/14 11/7 11/21 25/14 29/25 32/19 33/8 33/9 34/3 34/5 34/13 35/21 36/15 38/1 42/21 43/22 44/10 48/3 48/10 48/11 48/11 48/12 48/13 48/15 49/14 50/22 50/22 51/2 51/18 52/24 57/6 57/8 57/9

which [24]  3/9 5/4 5/19 11/23 12/21 13/21 24/6 26/12 26/20 29/24 30/10 32/2 33/3 35/10 36/6 38/11 38/23 41/20 43/22 44/2 48/24 52/14 58/22 58/25

Whichever [1]  39/12

while [12]  10/16 12/25 17/15 17/17 18/3 18/15 19/15 19/25 37/10 49/21 49/21 52/4

whistles [1]  38/24

who [19]  4/6 7/5 7/6 7/15 7/24 12/22 13/2 18/19 19/19 20/15 24/18 40/25 41/15 42/8 42/10 54/1 54/7 54/7 54/18

whole [2]  25/16 45/12

why [35]  10/9 10/9 10/12 10/12 10/15 16/8 24/17 26/3 26/24 27/3 28/8 34/13 35/24 36/3 36/15 36/16 37/11 37/13 37/23 37/25 38/1 38/19 39/16 42/25 43/4 43/10 43/14 43/17 44/7 45/21 45/23 46/18 47/24 47/25 52/14

wig [2]  3/25 4/1

wigs [1]  3/15

will [16]  5/21 7/1 8/7 9/6 9/13 12/19 31/12 32/8 41/16 50/25 53/1 53/4 57/24 57/25 58/16 59/2

wise [1]  54/12

wish [3]  6/1 53/2 53/15

withdrew [2]  4/22 4/24

within [4]  11/10 30/7 39/22 57/24

without [2]  26/13 33/24

witnesses [2]  26/6 41/16

won't [1]  59/4

word [2]  31/5 31/13

words [4]  5/17 11/6 28/16 46/11

wore [1]  3/15

work [4]  31/24 39/11 39/13 54/11

works [1]  8/4

worn [1]  3/14

would [58]  6/3 11/10 12/6 12/16 15/7 17/17 20/8 20/8 22/21 23/2 26/15 26/22 29/10 29/20 30/5 30/25 31/9 31/25 32/1 32/21 35/18 35/19 36/5 37/23 37/25 38/23 38/24 39/9 42/20 43/13 43/19 43/21 43/22 44/11 45/9 45/11 46/9 47/9 47/17 48/5 48/23 48/25 49/1 49/5 50/4 50/8 50/14 50/16 51/9 52/9 52/10 53/10 54/3 56/21

56/21 58/7 58/25 59/6

wouldn't [9]  15/6 36/2 38/1 43/14 43/17 45/5 46/17 49/17 52/7

written [3]  16/18 57/23 59/8

wrong [1]  58/15

**Y**

Yeah [1]  44/10

year [1]  55/21

Yelling [1]  35/15

yes [56]  4/3 4/20 7/21 7/23 9/18 12/19 13/7 13/10 14/11 15/2 15/23 16/2 16/2 16/9 17/13 18/6 18/8 19/2 20/2 21/22 22/1 22/19 23/21 24/3 24/4 25/4 26/5 27/10 28/3 29/9 30/2 32/12 32/24 33/11 33/16 33/17 34/1 34/19 39/4 41/4 42/23 48/19 49/16 50/3 50/5 51/14 51/24 53/20 54/25 55/7 56/4 56/15 57/3 57/9 57/19 57/20

yesterday [2]  3/8 3/9

yet [2]  48/2 58/8

you [116]

you'd [1]  57/13

you'll [2]  58/3 59/8

you're [6]  14/1 21/5 21/7 38/3 42/4 47/14

you've [5]  12/1 27/9 35/21 47/4 52/15

young [1]  52/2

your [101]